JOHN S. MULLEN vs. LUDLOW HOSPITAL SOCIETY & others.[1] No. 90-P-1467. June 2, 1992. *Contract*, Employment. *Employment*, Termination. *Public Policy*. *Workers' Compensation Act*, Emotional distress, Injuries to which act applies. *Emotional Distress*. *Unlawful Interference*. *Libel and Slander*.

John S. Mullen, the plaintiff, brought this action against the Ludlow Hospital Society (the "Hospital") and two of its administrators, Barbara Rohan and Phillip M. Zsoldos, asserting causes of action in contract and tort against the Hospital and in tort against the administrators. The Superior Court granted the defendants summary judgment on all counts[2] and the plaintiff appeals. We affirm.

From the complaint, amended complaint,[3] and the materials filed in connection with the motions for summary judgment, the following facts emerge. In 1982, the plaintiff, after responding to a newspaper advertisement, was hired for a public relations position at the Ludlow Hospital. His tenure at the Hospital went smoothly until 1987, when Barbara Rohan

---

[1]Barbara Rohan and Phillip M. Zsoldos.

[2]There were two summary judgments issued — one on the plaintiff's original complaint and one on the plaintiff's amended complaint, which added counts of negligent infliction of emotional distress against the Hospital and Rohan. The motion to amend the complaint also undertook to include counts alleging civil rights violations by the Hospital and Rohan, but the addition of those counts was denied.

[3]The amended complaint alleges: (1) malicious interference with contractual relations against Rohan and Zsoldos (Counts 1 and 4); (2) intentional infliction of emotional distress against Rohan and Zsoldos (Counts 2 and 5); (3) defamation against Rohan (Count 3), (4) breach of contract against the Hospital (Count 6), (5) breach of the covenant of good faith and fair dealing against the Hospital (Count 7); (6) negligent infliction of emotional distress against the Hospital and Rohan (Counts 8 and 9).

became the interim administrator of the Hospital. The plaintiff and Rohan did not hit it off; indeed, they sank into what may be euphemistically described as a difficult working relationship. Rohan was dissatisfied with the plaintiff's work and did not hesitate to voice her dissatisfaction directly to the plaintiff and in written evaluations of his work. The plaintiff felt that, as a result of her animosity toward him, Rohan took his work away from him and gave it to a member of a consulting firm in which she had an interest.

In September, 1988, in a letter signed by Rohan's assistant, Zsoldos, the plaintiff was discharged from his position at the Hospital. After receiving notification of his dismissal, the plaintiff sought a hearing before the Hospital personnel committee. A hearing date was set, but, on the advice of counsel, the plaintiff did not attend because the Hospital refused to allow the plaintiff's counsel and a stenographer to attend the hearing.

1. *Status as at-will employee.* Despite the plaintiff's assertion in his affidavit that he understood that, as long as the Hospital had work for him, he would keep his job until he chose to retire, the undisputed evidence demonstrates that the plaintiff was an at-will employee. The Hospital did not seek out the plaintiff as an employee; the plaintiff applied to the Hospital in response to a newspaper advertisement on his own initiative. Contrast *Carnig* v. *Carr*, 167 Mass. 544, 547 (1897). There was no agreement, written or oral, specifying a definite period of employment. *Jackson* v. *Action for Boston Community Dev., Inc.*, 403 Mass. 8, 9 (1988). While there was an employment manual, it did not form the basis for a contract because the plaintiff did not negotiate its terms and received it only after he began working. In addition, the manual, by its own terms, declared it was not a contract and that the Hospital could change the terms unilaterally. *Id.* at 14-15.

As an employee at will, the plaintiff could be discharged "for almost any reason or for no reason at all." *Wright* v. *Shriners Hosp. for Crippled Children*, 412 Mass. 469, 472 (1992). While there are some recognized public policy exceptions to that rule, none is applicable here. There is no showing of any forfeiture of benefits, *Fortune* v. *National Cash Register Co.*, 373 Mass. 96, 104-105 (1977).[4] There is not any evidence that the plaintiff was discharged to prevent him from asserting a legally guaranteed right, for doing what the law requires, or for refusing to do what the law

[4]The plaintiff's allegation (in his affidavit) that his discharge deprived him of an increase in pension benefits is not sufficient to demonstrate a *Fortune*-type forfeiture. It is correct, as the plaintiff has called to attention, that had he remained in the Hospital's employment, the percentage of his pension contributions which would become vested would increase with the time spent in the Hospital's employment. However, a loss of future income for future services does not come within the obligation of good faith and fair dealing imposed in *Fortune* v. *National Cash Register Co.*, 373 Mass. at 104-105. *Gram* v. *Liberty Mut. Ins. Co.*, 384 Mass. 659, 672 (1981), S.C., 391 Mass. 333 (1984). *McCone* v. *New England Tel. & Tel. Co.*, 393 Mass. 231, 233-234 (1984).

forbids. See *Smith-Pfeffer* v. *Superintendent of the Walter E. Fernald State Sch.*, 404 Mass. 145, 150 (1989); *Wright* v. *Shriners Hosp. for Crippled Children*, 412 Mass. at 472. Nor was the plaintiff discharged for cooperating with a law enforcement investigation of his employer. *Flesner* v. *Technical Communications Corp.*, 410 Mass. 805, 811 (1991).

As to the claim that the Hospital committed a breach of its implied covenant of good faith and fair dealing for failure to provide a hearing in accordance with the employment manual, it may be enough to say that the undisputed facts are that the Hospital scheduled a hearing for the plaintiff which the plaintiff chose not to attend. The Hospital was not required to do more. Putting to one side the pertinence of the employment manual to the plaintiff's situation, the manual did not provide for a "trial-type" hearing, i.e., one in which counsel would examine and cross-examine.

2. *Intentional and negligent infliction of emotional distress.* (a) *Intentional infliction.* The first Superior Court judge, who acted on the earlier of the two motions for summary judgment, correctly determined that the plaintiff's claims for intentional infliction of emotional distress were barred under the Workers' Compensation Act, specifically under G. L. c. 152, §§ 24 and 29. The acts complained of by the plaintiff, persistent criticism of his work and his eventual discharge, occurred during the course of his employment and in the exercise by Rohan and Zsoldos of their supervisory duties in furtherance of the employer's interest. See *Anzalone* v. *Massachusetts Bay Transp. Authy.*, 403 Mass. 119, 124-125 (1988); Locke, Workmen's Compensation § 10.5, at 143 (Nason & Wall Supp. 1990). If compensation for injuries from an intentional infliction of emotional harm arising out of the employer-employee relationship (see G. L. c. 152, §§ 1[7A] & 29), is to be pursued in a common law action, as here, there must first be a notice of intent so to do as prescribed in G. L. c. 152, § 24. Otherwise, the exclusive remedy is as a workers' compensation claim. *Anzalone* v. *Massachusetts Bay Transp. Authy.*, 403 Mass. at 124-125. *Kelly* v. *Raytheon, Inc.*, 29 Mass. App. Ct. 1000, 1001 (1990).

(b) *Negligent infliction.* Under the Workers' Compensation Reform Act (St. 1985, c. 572), mental or emotional disability arising principally out of a bona fide personnel action (such as termination of employment) was expressly excluded as a compensable injury under the workers' compensation statutes. See G. L. c. 152, § 1(7A), as amended by St. 1985, c. 572, § 11, and G. L. c. 152, § 29, as amended by St. 1985, c. 572, § 38[5]; Locke, Workmen's Compensation § 10.5, at 143 (Nason & Wall Supp. 1990). It seems a paradox to eliminate nonintentional infliction of emotional harm arising out of a personnel action as a workers' compensation claim but to allow such a claim through another door as a common law action. We need not decide the point because there is missing from the

---

[5]These amendments neutralized the holding in *Kelly's Case*, 394 Mass. 684 (1985).

plaintiff's materials on summary judgment evidence of "physical harm manifested by objective symptomatology." See *Payton* v. *Abbott Labs.*, 386 Mass. 540, 557 (1982). The judge reasonably ruled that, in context, complaints of sick stomach, sleeplessness, and sweating did not constitute evidence of the requisite physical harm.

3. *Other claims.* The plaintiff presented no evidence tending to prove his assertion that Rohan and Zsoldos acted improperly, i.e., for a reason unrelated to the Hospital's legitimate interest. Therefore, the plaintiff could not establish a claim for intentional interference with contractual relations. See *United Truck Leasing Corp.* v. *Geltman*, 406 Mass. 811, 815 (1990); *Wright* v. *Shriners Hosp. for Crippled Children*, 412 Mass. at 476. The plaintiff also failed to present evidence that Rohan excessively published the remarks about his work which he claims were defamatory. Without excessive publication, Rohan had a privilege to publish that information about the plaintiff in evaluating his work within the Hospital. See *McCone* v. *New England Tel. & Tel. Co.*, 393 Mass. 231, 235 (1984); *Foley* v. *Polaroid Corp.*, 400 Mass. 82, 95 (1987).

4. *Conclusion.* The plaintiff failed to present evidence showing that there was a genuine factual issue for trial on any of the counts presented. Accordingly, summary judgment was properly granted.

*Judgments affirmed.*

*S. Thomas Martinelli* for the plaintiff.
*Rosemary J. Nevins* for the defendants.