Sandra M. VODDE, Plaintiff,

v.

INDIANA MICHIGAN POWER CO.
and Elio Bafile, Defendants.

No. 1:93–CV–306.

United States District Court,
N.D. Indiana,
Fort Wayne Division.

Feb. 28, 1994.

John C. Theisen and Jeffrey S. Schafer, Gallucci, Hopkins and Theisen, P.C., Fort Wayne, IN, for plaintiff.

Herbert C. Snyder, Jr., Barnes & Thornburg, Fort Wayne, IN, for defendants.

## MEMORANDUM OF DECISION AND ORDER

COSBEY, United States Magistrate Judge.

### I. *INTRODUCTION*

This matter is before the Court[1] on the Motion to Dismiss filed by Defendant Elio Bafile ("Bafile") on January 12, 1994, together with a memorandum in support. On January 31, 1994, the Plaintiff Sandra M. Vodde ("Plaintiff") filed a response. A reply brief was filed by Bafile on February 14, 1994. This Court has jurisdiction pursuant to 28 U.S.C. § 1331. For the reasons hereinafter provided, Bafile's Motion to Dismiss will be GRANTED.

### II. *BACKGROUND*

The Plaintiff has brought this action against both Bafile and Indiana Michigan Power Company ("I & M") alleging violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.* and the Civil Rights Act of 1964 as amended by the Civil Rights Act of 1991 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*

The Plaintiff contends that she began working at I & M in 1980 as a junior key entry operator. (Plaintiff's Complaint ¶ 11). Gradually she received promotions in the accounting department. (*Id.*)

The Plaintiff contends that since December 1984, she has been disabled within the meaning of the ADA because of physical and mental impairments. (Plaintiff's Complaint ¶ 13). The Plaintiff has received a number of leaves of absence and apparently in July of 1991, the Plaintiff obtained another one and consulted with I & M supervisors to determine whether this absence would negatively reflect upon her performance. (Plaintiff's Complaint, ¶ 16). She was assured that there would be no negative repercussions.

1. Jurisdiction of the undersigned Magistrate Judge is based on 28 U.S.C. § 636(c), all parties consenting.

(*Id.*) Notwithstanding these assurances, the Plaintiff's next job performance evaluation reflected a "1" in the attendance/punctuality category. (Plaintiff's Complaint ¶ 17). Such a rating is the most unsatisfactory level of performance. (*Id.*) Apparently the Plaintiff alleges that her original rating, given by one of her supervisors, was really a "3" and that Bafile, the Plaintiff's supervisor in accounting, later changed the rating to a "1." (Plaintiff's Complaint ¶ 18). The Plaintiff contends that Bafile did not alter male job performance evaluations, only hers, and that Bafile generally treated male employees and non-disabled employees more favorably with respect to transfers to other positions. (Plaintiff's Complaint ¶ 19).

It is further alleged that Bafile consistently refused to reasonably accommodate the Plaintiff's disabilities and refused her a transfer until August 1993 when she transferred to a meter reader position. (Plaintiff's Complaint ¶ 20). Plaintiff contends that she was thus treated differently than similarly situated male and non-disabled employees. (*Id.*). The Plaintiff also contends that she was not permitted to return to work after her last leave of absence despite the fact that Bafile received correspondence from the Plaintiff's treating physicians and other health care providers indicating an ability to return to work. (Plaintiff's Complaint ¶ 21). Plaintiff contends that this again is evidence that she was treated differently than similarly situated male and non-disabled employees. (*Id.*)

Thus, the Plaintiff contends that Bafile was acting as an agent of I & M and engaged in discriminatory and retaliatory practices with malice and reckless indifference to the Plaintiff's rights. (Plaintiff's Complaint ¶ 22).

The Plaintiff now seeks back pay and benefits, compensatory damages, punitive damages, costs, pre-judgment interest and attorney fees. (*See* Plaintiff's Complaint Count VII.)

Bafile's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) rather squarely presents the following issue: can the Plaintiff maintain an individual liability claim against Bafile under either the ADA or Title VII? Bafile's obvious answer is that such a claim cannot be maintained, citing a recent case from the Ninth Circuit, *Miller v. Maxwells' Int'l, Inc.,* 991 F.2d 583 (1993) *cert. denied* —— U.S. ——, 114 S.Ct. 1049, 127 L.Ed.2d 372 (1994). Essentially, the *Miller* court held that individual defendants cannot be held liable for damages under Title VII, and by logical extension the ADA. *Id.* at 587.

The Plaintiff's rejoinder is that the ADA and Title VII both clearly permit claims against supervisory individuals; that the *Miller* case "completely misreads the definition provisions of the ADA and Title VII"; and that even if the Court finds those statutes ambiguous, it should still interpret them as supporting individual liability against corporate agents such as Bafile. The Plaintiff argues that only with such a reading will the twin purposes of Title VII and the ADA, compensation and deterrence, be thus advanced.

Bafile's reply argues that the *Miller* case does not stand alone: indeed, district courts in the Seventh Circuit have held that supervisory individuals may be liable only in their official capacities, not as individuals. *See, for example, Weiss v. Coca–Cola Bottling Co.,* 772 F.Supp. 407 (N.D.Ill.1991) *aff'd.,* 990 F.2d 333 (7th Cir.1993). Moreover, Bafile observes that since the passage of the Civil Rights Act of 1991 (allowing for compensatory and punitive damages) there is now a need to reconcile how the statute's damages caps for small employers (since the number of "employees" determines the amount of the cap) could possibly apply to supervisory personnel with purported individual liability. (*See* Plaintiff's Memorandum in Support, p. 6). Indeed, Bafile's point is that since he had no "employees," a literal reading of the statute would seemingly lead to the rather incongruous conclusion that he is entitled to no damages cap protection at all. (*Id.*) The incongruity arises because very small employers fall outside the Acts; larger, but still small companies have the protection of the caps; yet individual supervisors like Bafile have seemingly no protection whatsoever. *See* Memorandum in Support, pp. 6–7. In fact, if the statutes were read quite literally, it could be argued that the average supervi-

sory employee (no doubt as small as any entity excluded by Title VII or the ADA) is not excluded from liability, and would have exposure equal to the largest "covered entity."

This all presents a rather interesting question regarding the current statutory framework under both the ADA and Title VII. The Court will attempt to resolve the point, but first, a review of the standard on a motion to dismiss is in order.

## III. *MOTION TO DISMISS STANDARD*

A complaint should not be dismissed for failure to state a claim unless it appears that the plaintiff can prove no set of facts which would support his claim of entitlement to relief. *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

In determining the propriety of dismissal under Fed.R.Civ.P. 12(b)(6), the court must "accept as true all well-pled factual allegations in the complaint and draw all reasonable inferences therefrom in favor of the plaintiff." *Perkins v. Silverstein,* 939 F.2d 463 (7th Cir.1991). *See also Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Gomez v. Illinois State Bd. of Education,* 811 F.2d 1030, 1032–33 (7th Cir.1987). The purpose of the motion to dismiss is to test the legal sufficiency of the complaint and not to decide the merits. *Triad Assoc., Inc. v. Chicago House Auth.,* 892 F.2d 583, 586 (7th Cir.1989). "If it appears beyond doubt that plaintiff can prove any set of facts consistent with the allegations in the complaint which would entitled them to relief; dismissal is inappropriate." *Perkins,* 939 F.2d at 463. Further, the court must "construe pleadings liberally, and mere vagueness or lack of detail does not constitute sufficient ground for a motion to dismiss." *Strauss,* 760 F.2d at 767.

## IV. *DISCUSSION*

■ The threshold question before the Court is whether Bafile, in regard to the ADA, can be considered a "covered entity" who could be liable for discriminating in employment matters against a qualified individual based on that person's disability. 42 U.S.C. § 12112(a). The term, "covered enti-ty" includes "an employer." 42 U.S.C. § 12111(2). The term "employer" is defined as "a person engaged in an industry affecting commerce who has fifteen or more employees ... and any agent of such person." 42 U.S.C. § 12111(5)(A).

Similarly, Title VII prohibits "employers" from discriminating against individuals on the basis of "race, color, religion, sex or national origin." 42 U.S.C. § 2000e–2(a), (b). Title VII's definition of "employer" was the model for the ADA's. § 2000e(b).

To date, the Seventh Circuit has yet to directly address whether individuals who are officers or supervisors of either Title VII, or ADA employers, are subject to personal liability under those statutes; however, in some Title VII cases where the issue has not been directly addressed, the court has upheld such personal liability. *See, e.g., Gaddy v. Abex Corp.,* 884 F.2d 312, 318–19 (7th Cir.1989) (upholding personal liability for decision-making supervisor in Title VII case); *EEOC v. Vucitech,* 842 F.2d 936, 939–42 (7th Cir. 1988) (same).

Other courts have not been as silent. *See Bertoncini v. Schrimpf,* 712 F.Supp. 1336 (N.D.Ill.1989) (compiling cases). Indeed, sometime ago this court considered the question. *See, e.g., Hinton v. Methodist's Hospitals, Inc.,* 779 F.Supp. 956, 959 (N.D.Ind. 1991) (Judgment granted in favor of individual defendant because he was a co-worker, not a managerial supervisor.); *Root v. Ebby,* 39 Employment Practice Decision (CCH) P35, 963, 1984 WL 2126 (N.D.Ind. November 30, 1984) (motion to dismiss denied because individual defendant may have had "significant control" over plaintiff's access to employment and was thus an "employer.")

Some courts have come to the conclusion that individual capacity suits under Title VII (and presumably, by extension, the ADA) are improper. *Miller,* 991 F.2d at 587; *Busby v. City of Orlando,* 931 F.2d 764, 772 (11th Cir.1991); *Harvey v. Blake,* 913 F.2d 226, 227–28 (5th Cir.1990); *Weiss v. Coca–Cola Bottling Co.,* 772 F.Supp. 407, 411 (N.D.Ill. 1991); *aff'd.* 990 F.2d 333 (7th Cir.1993) *Pommier v. James L. Edelstein Enterprises,* 816 F.Supp. 476 (N.D.Ill.1992); *Hangebrauck*

*v. Deloitte and Touche,* 1992 W.L. 348743 at *3 No. C 3328. (N.D.Ill. November 9, 1992); *Mobley v. Kelly Kean Nissan, Inc.,* 1993 W.L. 356924 at *4, No. C 2625 (N.D.Ill. Sept. 9, 1993). *But see, Paroline v. Unisys Corp.,* 879 F.2d 100 (4th Cir.1989), *vacated in part,* 900 F.2d 27 (4th Cir.1990) (supervisor may be individually liable as "employer" under Title VII); *Jones v. Continental Corp.,* 789 F.2d 1225 (6th Cir.1986) (same); *Vakharia v. Swedish Covenant Hospital,* 824 F.Supp. 769 (N.D.Ill.1993); *Strzelecki v. Schwartz Paper Co.,* 824 F.Supp. 821, 829 n. 3 (N.D.Ill.1993); *U.S. Equal Employment Opportunity Comm. v. AIC Security Investigations Ltd.,* 1993 W.L. 427454 at *4–7 (N.D.Ill. Oct. 21, 1993).

What seems to be clear is that the term "employer," under both Title VII and the ADA, is defined to include any agent of the employer. 42 U.S.C. § 2000e(b); 42 U.S.C. § 12111(5)(A). The question becomes, however, did Congress really intend by means of that definition to impose individual liability upon a supervisory individual as a mere agent of the employer? In answer to that question, *Miller* basically got it right. Although the Plaintiff criticizes *Miller* for its apparent reliance upon the theory of *respondeat superior* liability to explain why the term "agent" is even in the statutes, the court does not believe that such an analysis is, as the Plaintiff suggests, "fatally flawed." As the Seventh Circuit has noted, the definition of "employer" in the context of Title VII "surely evinces an intent to place some limits on the acts of employees for which employers under Title VII are to be held responsible." *See Shager v. Upjohn,* 913 F.2d 398, 404–05 (7th Cir.1990) (an ADEA case, but discussing agency in the context of Title VII's definition of "employer") (quoting *Meritor Savings Bank v. Vinson,* 477 U.S. 57, 72, 106 S.Ct. 2399, 2408, 91 L.Ed.2d 49 (1986)). Essentially, Title VII and the ADA both employ agency language because it underscores the notion that the employer is to have some derivative liability for the deliberate discriminatory acts of its employees. *Id.* More precisely, in contrast to a case involving acts of sexual harassment by an employee (where the employer's own fault must be shown under a "known or should have known" stan-

dard before liability can be established) a supervisory employee who takes a negative employment action against a protected employee because of some discriminatorily wrongful intent, "does not carry his behavior so far beyond the orbit of his responsibilities as to excuse the employer." *Shager,* 913 F.2d at 405 (citing *Restatement (Second) of Agency* § 228 (1958). So, such intentionally discriminatory conduct on the part of the supervisory employee, done within his "apparent authority," means that the employer is liable—in contrast to those alleged acts of sexual harassment by an employee (conduct surely unrelated to the employer's business), which require something more: the employer's own fault. *Id.* *See also, Guess v. Bethlehem Steel Corp.,* 913 F.2d 463, 465 (7th Cir.1990). "In both sorts of case, however, the ultimate concern is with confining the employer's or principal's liability to the general class of cases in which he has the practical ability to head off the injury to his employee's, or other agent's, victim." *Shager,* 913 F.2d at 405.

The point then is that unlike a sexual harassment claim (where the employer may be free from fault, but the agent culpable) the situation described by the Plaintiff in her complaint here would lead to liability on the part of the employer, I & M, since Bafile's alleged actions were clearly done within his "apparent authority." This is precisely the type of derivative liability that Congress intended to write into the statutes. *Shager,* 913 F.2d at 404–05.

Thus, within this context, I & M stands answerable for Bafile's alleged discriminatory acts. While it might be somewhat unrealistic to expect an employer to be able to purge every trace of sexual harassment from the work place (thus leading to the liability rule governing such claims), it has long been the rule that an employer is responsible for the deliberate acts of his employee acting within the scope of his authority (*e.g.,* authority encompassing a supervisor rating an employee; and a supervisor determining interdepartmental transfers of employees). *Shager,* 913 F.2d at 404. Thus, the *Miller* court was correct when it relied on a species of derivative liability in formulating the rule

that only "official capacity" supervisory liability was possible. *Miller*, 991 F.2d at 587. In other words, Bafile can be liable only in his *official*, not individual, capacity. *Id.* After all, on these facts, I & M presumably had a longstanding opportunity "to head off the injury to" Bafile's victim. *See Shager*, 913 F.2d at 405. As a consequence, Bafile's acts were, if anything, I & M's acts. *Id.* at 404. Since suing Bafile in his "official capacity" (all that is available here) is the same thing as suing I & M, keeping him in this case serves no useful purpose.

Apart from policy concerns that evince themselves within the case law, "[t]he statutory scheme itself indicates that Congress did not intend to impose individual liability on employees." *Miller*, 991 F.2d at 587. Indeed, it was the intent of Congress to limit liability to employers with fifteen or more employees. 42 U.S.C. § 2000e(b). The obvious intent was to remove from small entities the burden of those costs associated with litigating discrimination claims. *Miller*, 991 F.2d at 587. Given that premise, it is difficult to conclude that Congress intended to remove truly small employers from the ambit of liability, and to cap damages as to those slightly larger, yet at the same time, sought to impose unchecked civil liability against individual employees acting in their official capacities. *Id.*

In fact, the enactment of the Civil Rights Act of 1991 does not alter the force of this conclusion. While some cases prior to the Civil Rights Act of 1991 merely "bolstered" their arguments of no individual liability by observing that the remedies available under Title VII were remedies which only an employer, not an individual, could generally provide—i.e., back pay, reinstatement and other equitable relief if warranted, *Pommier*, 816 F.Supp. at 481 (citing *Weiss*, 772 F.Supp. at 410–11); the addition of compensatory and punitive damages into the mix does not mean that individual liability has now become the expressed intent of Congress. Of course, some courts now view the passage of the Civil Rights Act of 1991 as an indication that these new damages can now be imposed against individuals. *See EEOC v. AIC Security Investigations*, 1993 W.L. 427454 at * 5. This obscures the fact that while the Civil Rights Act of 1991, 42 U.S.C. § 1981a, now permits compensatory and punitive damages for intentional discrimination, Congress at the same time specifically capped those damages depending upon the size of the respondent *employer*. 42 U.S.C. § 1981a(b)(3)(A)–(D). This Court thus agrees with *Miller* that "if Congress had really wanted to impose individual liability under Title VII for compensatory or punitive damages, it would have included *individuals* in this litany of limitations [i.e. the caps] and would have discontinued the exemptions for small employers."[2] 991 F.2d at 587–8 n. 2. Thus, passage of the Civil Rights Act of 1991 really suggests that Congress did not intend to include individual supervisory personnel within the meaning of "employer." Moreover, such an interpretation would present practical difficulties as well. For instance, in *U.S. Equal Employment Opportunity Commission v. AIC Security Investigations, Ltd.*, 823 F.Supp. 571, 576–77 (N.D.Ill.1993) the court was faced (after finding the sole shareholder of the employer corporation individually liable) with having to reconcile the court's expressed notion of individual liability with the various damages caps available to small employers. The court took the rather facile approach of simply engrafting the damages cap available for the true employer upon the liability exposure of the individual defendant. *Id.* at 577. Such an approach, of course, means that two employees of two different-sized employers, each having performed the same discriminatory act, could have their liability exposure assessed on somewhat disparate scales (i.e., application of the caps). While capping exposure based on the number of employees might make some sense as to the true employer (giving the liability scheme at least some degree of proportionality), that logic does not transfer easily to cases involving individual employees. Moreover, such a result is inconsistent; an individual supervisory defendant is being

---

2. An entity with fewer than 15 employees is not an "employer" within the meaning of either Title VII, or the ADA, and thus falls outside the provisions of each Act. 42 U.S.C. § 2000e(b); 42 U.S.C. § 12111(5)(A).

held liable in his individual capacity, yet essentially becomes cloaked with "official capacity" status for benefit of the caps. It is unlikely that Congress, in addressing a national concern, truly intended such a "crazy-quilt" scheme of liability.

Finally, the policy concerns of the Plaintiff have been adequately met by the current statutes. In today's current litigation environment, employers are attuned to employee discriminatory conduct and have established elaborate monitoring and response procedures. Clearly, under the facts of this case, where liability can be visited upon the employer through the acts of the employee, the employer will be acutely sensitive to any suggestion of discrimination and will be committed to its eradication. In short, "no employer will allow supervisory personnel to violate Title VII [or the ADA] when the employer [will thus be] liable ... [.]" *Miller*, 991 F.2d at 588. Indeed, the normally deep-pocketed and publicity-conscious employer (in general contrast to the ordinary supervisory employee bent on pursuing some private agenda) can be counted upon to be the most effective guardian of the marketplace. Thus, the concern for deterrence can be adequately met by this interpretation of the statute.

As for compensation, it is a stretch to suggest that having the supervisory employee made a party to the action will advance the compensatory interests of the victim. Indeed, in almost all situations, and certainly here, having the employer held liable is adequate assurance that the goal of compensation will be met.

In conclusion then, the Defendant Bafile's Motion to Dismiss should be granted.

### V. *CONCLUSION*

Defendant Bafile's Motion to Dismiss is hereby GRANTED.