**Pamela G. HALTEK, Plaintiff,**

v.

**VILLAGE OF PARK FOREST, Robert Maeyama and John Lancaster, Defendants.**

**No. 93 C 6700.**

United States District Court, N.D. Illinois, Eastern Division.

Sept. 27, 1994.

Darlene A. Vorachek, Vicki Lafer Abrahamson, Janice M. Rauen, Carrie J. Lausen, Vicki Lafer Abrahamson & Associates, Chicago, IL, for plaintiff.

Thomas R. Weiler, O'Reilly, Cunningham, Norton & Mancini, Wheaton, IL, for defendants.

## MEMORANDUM OPINION AND ORDER

NORDBERG, District Judge.

Before the Court is Defendant Robert Maeyama's and Defendant John Lancaster's Motion to Dismiss Counts I through IX of Plaintiff Pamela Haltek's Amended Complaint and Defendant Village of Park Forest's Motion to Strike Plaintiff's claim for damages in Counts I through VII.

Plaintiff's Amended Complaint contains ten counts. Counts I through III allege that the Defendants violated the Americans With Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12111–12117. Counts IV through VI state a claim for violation of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794. Counts VII and VIII assert that Defendants violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2000e–17, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 1981a (Supp.1994). Finally, Count IX states a claim for retaliatory employment practices.

Defendants request this Court to dismiss Counts I through IX of Plaintiff's Amended Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6), because individual supervisory employees are not "employers" within the meaning of the ADA, the Rehabilitation Act of 1973 and Title VII, and thus they are not subject to liability under these Acts. Similarly, Defendants assert that under Illinois law, a claim for retaliatory employment practices cannot be brought against a defendant who is not the plaintiff's employer.

Defendant Robert Maeyama was, at the relevant time, the Chief of Police of the Village of Park Forest and Defendant John Lancaster was, at the relevant time, Captain of the Police Department of the Village of Park Forest. (Amended Complaint at ¶ 5.) Both individual Defendants served as Plaintiff's supervisor. *Id.*

*Americans With Disabilities Act, Title VII and the Rehabilitation Act of 1973*

■ The issue which this Court confronts is whether supervisory employees are "employers," and thus may be held individually liable for discrimination under the ADA, Title VII and the Rehabilitation Act. The ADA defines "employer" as

a person engaged in an industry affecting commerce who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year, and any agent of such person.

42 U.S.C. § 12111(5)(A). The ADA's definition of employer mirrors the definition in Title VII, 42 U.S.C. § 2000e(b). Moreover, Section 504(d) of the Rehabilitation Act states, "[t]he standards used to determine whether this section has been violated in a complaint alleging employment discrimination under this section shall be the standards applied under title I of the Americans with Disabilities Act of 1990 (42 U.S.C. 12111 et seq.)." 29 U.S.C. § 794(d). Thus, in an employment discrimination case, such as the instant one, the ADA's definition of "employer" is applicable to the three counts in Plaintiff's Amended Complaint which state a claim under the Rehabilitation Act.

■ The Seventh Circuit has not directly addressed whether a supervisory officer is an "employer" within the meaning of the ADA, Title VII and the Rehabilitation Act. However, the Seventh Circuit has, without discussion, upheld personal liability against decision-making supervisors in at least one Title VII case. *Gaddy v. Abex Corp.*, 884 F.2d 312, 318–19 (7th Cir.1989). *See also Price v. Marshall Erdman & Associates, Inc.*, 966 F.2d 320, 324 (7th Cir.1992) (upholding personal liability against a supervisory employee in an Age Discrimination in Employment Act of 1967 case.)

The District Courts in the Northern District of Illinois are split on the issue of whether the ADA, Title VII and the Rehabilitation Act authorize an action against an individual supervisory employee. A number of cases have held that, as individual supervi-

sory employees are not "employers" within the meaning of the ADA or Title VII, such individuals cannot be sued under the ADA or Title VII in their individual capacity. *Dirksen v. City of Springfield,* 842 F.Supp. 1117, 1122–23 (C.D.Ill.1994) (Mills J.); *Pelech v. Klaff–Joss, LP,* 828 F.Supp. 525, 529 (N.D.Ill.1993) (Aspen J.); *Pommier v. James L. Edelstein Enterprises,* 816 F.Supp. 476, 480 (N.D.Ill.1993) (Aspen J.); *Weiss v. Coca–Cola Bottling Co. of Chicago,* 772 F.Supp. 407, 410–411 (N.D.Ill.1991) (Duff J.).

The *Pelech* court reasoned that Title VII prohibits *"employers"* from discriminating against individuals on the basis of "race, color, religion, sex or national origin." 828 F.Supp. at 529 citing 42 U.S.C. §§ 2000e–2(a), (b). As previously noted, Title VII defines "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees ... and any agent of such person." 42 U.S.C. § 2000e(b). The *Pelech* court recognized that the language "any agent" includes immediate supervisors as "employers" when such supervisors are delegated an employer's traditional rights, such as hiring and firing. 828 F.Supp. at 529. *See also Harvey v. Blake,* 913 F.2d 226, 227 (5th Cir.1990). However, both the court in *Pelech* and in *Weiss* relied on the Fifth Circuit's reasoning in *Harvey* that a supervisor liable as an employer's agent is really a surrogate for the employer, and thus only liable in his official, as opposed to his individual, capacity. *Pelech,* 828 F.Supp. at 529; *Weiss,* 772 F.Supp. at 410–11. Suing an individual supervisory employee in his official capacity is the equivalent of suing the employer.

The notion that a supervisor liable as an employer's agent is really a surrogate for the employer and thus only liable in his official capacity is further supported by Title VII's statutory scheme. In *Miller v. Maxwell's International, Inc.,* 991 F.2d 583 (9th Cir. 1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1049, 127 L.Ed.2d 372 (1994), the Ninth Circuit explained that the statutory scheme of Title VII indicates that Congress did not intend to impose Title VII liability on individual employees because Congress limited Title VII liability to employers with fifteen or more employees. 991 F.2d at 587, citing 42 U.S.C. § 2000e(b). The *Miller* court noted, "[i]f Congress decided to protect small entities with limited resources from liability, it is inconceivable that it intended to allow civil liability to run against individual employees." 991 F.2d at 587.

The compensatory and punitive damage caps in the Civil Rights Act of 1991, 42 U.S.C. § 1981a(b)(3) (Supp.1994), which are based on the size of the respondent employer, further supports the conclusion that individual supervisory employees are not meant to be subject to liability under Title VII. *Miller,* 991 F.2d at 587 n. 2 citing 42 U.S.C. § 1981a(b)(3).

In addition to the Fifth and Ninth Circuits, the Tenth and Eleventh Circuits have also held that "[t]he relief granted under Title VII is against the *employer,* not individual employees whose actions would constitute a violation of the Act.... [T]he proper method for a plaintiff to recover under Title VII is by suing the employer, either by naming the supervisory employees as agents of the employer or by naming the employer directly." *Busby v. City of Orlando,* 931 F.2d 764, 772 (11th Cir.1991) (citations omitted). *See also, Sauers v. Salt Lake County,* 1 F.3d 1122, 1125 (10th Cir.1993).

However, other circuit courts and other courts in this district have rejected the rationale that an agent of an employer may not be held personally liable under Title VII for action taken on the employer's behalf. *Paroline v. Unisys Corp.,* 879 F.2d 100, 104 (4th Cir.1989), *vacated in part on reh'g,* 900 F.2d 27 (4th Cir.1990); *Jones v. Continental Corp.,* 789 F.2d 1225, 1231 (6th Cir.1986); *Raiser v. O'Shaughnessy,* 830 F.Supp. 1134, 1137 (N.D.Ill.1993) (Moran J.); *Vakharia v. Swedish Covenant Hospital,* 824 F.Supp. 769, 784–85 (N.D.Ill.1993) (Moran J.); *Strzelecki v. Schwarz Paper Co.,* 824 F.Supp. 821, 829 (N.D.Ill.1993) (Moran J.).

In *Paroline,* the Fourth Circuit reasoned that "an individual qualifies as an employer under Title VII if he serves in a supervisory position and exercises significant control over the plaintiff's hiring, firing or conditions of employment." 879 F.2d at 104. Thus, the *Paroline* court suggested that a supervisory

employee, acting as the agent of his or her employer, could be individually liable under Title VII.

The court in *Vakharia* held that the decisions in *Weiss* and *Pommier* were inconsistent with the broad remedial purposes of Title VII. 824 F.Supp. at 784–85. By way of example, the *Vakharia* court noted that "when a manager at a company terminates an employee, on account of that employee's race or age, the company is liable, as is the manager, unless the manager's decision was mandated by company policy set by someone else." *Id.* The *Vakharia* court reasoned that Title VII has two purposes: to compensate victims of discrimination and to deter discrimination in the future. *Id.* at 785. Even though supervisory employees cannot provide a discrimination victim with backpay or reinstatement, holding a supervisory employee individually liable furthers Title VII's goal of eradicating discrimination. *Id.*

Moreover, while backpay and reinstatement are generally not remedies which an individual supervisory employee can provide, the Civil Rights Act of 1991 allows for compensatory damages and punitive damages— remedies which are traditionally provided against individual defendants. The *Vakharia* court concluded that allowing individuals who make discriminatory decisions to elude punishment ensures that they will never alter their behavior and that they will subvert the broad remedial purposes of Title VII. *Id.* at 786.

This Court finds the rationale of the former cases, prohibiting individual liability of supervisory employees under Title VII, more persuasive than the rationale of the latter cases. Congress' explicit limitation of the definition of "employer" to "a person engaged in an industry affecting commerce who has 15 or more employees" suggests an intent to protect those with limited resources from liability. Thus to hold "any agent" of "a person engaged in an industry affecting commerce" individually liable under Title VII would contravene Congress' intent to protect entities with limited resources from liability. It is unreasonable to think that Congress would protect small entities from the costs associated with litigating discrimination claims and limit the available compensatory and punitive damages based on the size of the respondent employer, but subject an individual supervisory employee to unlimited liability. To suggest that the availability of compensatory and punitive damages, under the Civil Rights Act of 1991, provides support for holding supervisory employees personally liable ignores the damage caps placed on compensatory and punitive damages, which are based on the size of the respondent employer.

A supervisory employee acting as the agent of a person engaged in an industry affecting commerce is an "employer" as defined by Title VII and by the ADA. However, this Court does not believe that Congress, in defining "employer," meant to impose individual liability on a supervisory employee acting as the employee of the employer. Both Title VII and the ADA incorporate any agent into the definition of employer to underscore the notion that the employer is to have some derivative liability for the deliberate discriminatory acts of its designated agent employees. *Vodde v. Indiana Michigan Power Co.*, 852 F.Supp. 676, 679 (N.D.Ind.1994). Thus, when a plaintiff sues such a supervisory employee it is the equivalent of suing the company because the acts of the agent, in his or her official employment capacity, are the acts of the company. Consequently, this Court concludes that the statutory limitation on Title VII's and the ADA's definition of "employer" supports the determination that supervisory employees are not individually liable under Title VII or the ADA. The language "any agent" in Title VII's and the ADA's definition of "employer" does not undermine such a determination, but rather indicates Congress' intent to have the acts of the agent, in his or her official employment capacity, be the equivalent of the acts of the company on whose behalf the agent acts.

Concluding that an individual supervisory employee cannot be held personally liable under Title VII, the ADA or the Rehabilitation Act will not undermine the broad remedial purposes of these Acts. A company that risks liability for the discriminatory acts of its agents will police its supervisory employ-

ees and institute disciplinary measures to deter discriminatory acts. Thus, the threat of termination, suspension and demotion faced by supervisory employees who make discriminatory decisions prevents such employees from eluding punishment for their discriminatory acts and encourages such employees to eventually alter their behavior thus furthering the remedial purposes of Title VII, the ADA and the Rehabilitation Act. Since Defendants Robert Maeyama and John Lancaster cannot be sued in their individual capacity and suing these Defendants in their official capacity is the same as suing the Village of Park Forest, Counts I through VIII of Plaintiff's Amended Complaint are dismissed as to Defendants Robert Maeyama and John Lancaster.

*Retaliatory Employment Practices*

■ Defendants assert that under Illinois law, a claim for retaliatory employment practices cannot be brought against a supervisory employee because the supervisory employee is not the plaintiff's employer. Unfortunately, the parties have not cited and this Court, through its own research efforts, cannot find an Illinois Supreme Court case addressing the issue of whether a supervisory employee can be held personally liable for retaliatory employment practices.

In *Morton v. Hartigan,* 145 Ill.App.3d 417, 99 Ill.Dec. 424, 426–27, 495 N.E.2d 1159, 1161–62 (1st Dist.1986), the court held that a plaintiff's supervisor was not a proper party defendant in a retaliatory discharge action because the supervisor was not the plaintiff's employer, but rather the employer's agent. *See also Balla v. Gambro, Inc.,* 203 Ill. App.3d 57, 148 Ill.Dec. 446, 450, 560 N.E.2d 1043, 1047 (1st Dist.1990), *rev'd on other grounds,* 145 Ill.2d 492, 164 Ill.Dec. 892, 584 N.E.2d 104 (1991); *Motsch v. Pine Roofing Co., Inc.,* 178 Ill.App.3d 169, 127 Ill.Dec. 383, 388, 533 N.E.2d 1, 6 (1st Dist.1988). The *Morton* court derived support for its decision from the Illinois Supreme Court's admonition against expanding the tort of retaliatory discharge in *Barr v. Kelso–Burnett Co.,* 106 Ill.2d 520, 88 Ill.Dec. 628, 478 N.E.2d 1354 (1985).

The Second District has declined to follow the First District's holding in *Morton.* *See*

*Bragado v. Cherry Electric Products Corp.,* 191 Ill.App.3d 136, 138 Ill.Dec. 476, 480, 547 N.E.2d 643, 647 (2nd Dist.1989); *Fellhauer v. City of Geneva,* 190 Ill.App.3d 592, 137 Ill. Dec. 846, 851, 546 N.E.2d 791, 796 (2nd Dist.1989), *rev'd on other grounds,* 142 Ill.2d 495, 154 Ill.Dec. 649, 568 N.E.2d 870 (1991). The *Fellhauer* court acknowledged the Illinois Supreme Court's admonition in *Barr* against the undue expansion of the tort of retaliatory discharge. *Id.* However, the *Fellhauer* court noted that the Illinois Supreme Court's decision in *Barr* addressed the definition of what constituted a clearly mandated public policy for the purposes of defining the scope of the tort of retaliatory discharge, but did not address who is a proper party defendant to a suit for retaliatory discharge. *Id.* The *Fellhauer* court noted further that under normal tort doctrine, if the acts of the agent render the principal liable, such acts also render the agent liable. *Id.* Thus, the court in *Fellhauer* concluded that, as the Illinois Supreme Court's admonition in *Barr* was not meant to limit traditional tort doctrine, the plaintiff could name his supervisor as a defendant in a retaliatory discharge action. *Id.*

As this Court finds the rationale of *Fellhauer* more persuasive than that of *Morton,* this Court holds that a plaintiff can name his supervisor as a defendant in a retaliatory discharge action. Accordingly, this Court denies Defendant Robert Maeyama's and Defendant John Lancaster's Motion to Dismiss Count IX of Plaintiff's Amended Complaint as it applies to them.

*Motion to Strike the Damages Claims in Counts I through VIII*

■ The Civil Rights Act of 1991, 42 U.S.C. § 1981a(b)(3)(B) (Supp.1994), states as follows:

The sum of the amount of compensatory damages awarded under this section for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses and the amount of punitive damages awarded under this section, shall not exceed, for each complaining party ...

(B) in the case of a respondent who has more than 100 and fewer than 201 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $100,000[.]

Counts I through VII of Plaintiff's Amended Complaint request $500,000.00 in compensatory damages and $1,000,000.00 in punitive damages. Defendant asserts that, as the Village of Park Forest employs fewer than 201 employees, and has done so in each of 20 or more calendar weeks in 1992 and 1993, Plaintiff's request for compensatory and punitive damages cannot exceed $100,000. (Affidavit of Erica Peterson at ¶ 4.)

Plaintiff responds that 42 U.S.C. § 1981a(c) (Supp.1994), provides that the Court shall not inform the jury of the damage caps described in § 1981a(b). Thus, Plaintiff argues that by striking her damage claims and forcing her to request compensatory and punitive damages in an amount not exceeding $100,000, this Court would in effect inform the jury of the damage caps outlined in § 1981a(b). Plaintiff asserts, and this Court agrees, that to avoid violation of § 1981a(c), this Court should deny Defendant's Motion to Strike and if Plaintiff subsequently receives a jury verdict in excess of the appropriate damage cap, the Court should then reduce such verdict so that it meets the damage cap requirements of § 1981a(b). *See, U.S. E.E.O.C. v. AIC Security Investigations, Ltd.,* 823 F.Supp. 571, 576 (N.D.Ill.1993) (reducing punitive damage award to meet the requirements of 42 U.S.C. § 1981a(b)(3)(C)). Accordingly, Defendant's Motion to Strike the Damage Claims in Counts I through VII of Plaintiff's Amended Complaint is denied.

**CONCLUSION**

For the foregoing reasons, Defendants' Motion to Dismiss is granted with regard to Counts I through VIII and denied with regard to Count IX. Defendant's Motion to Strike the Damage Claims in Counts I through VII of Plaintiff's Amended Complaint is denied.

DATED: September 21, 1994