Lauriat, J.
Karen Marie Miranda (“Miranda”) brought this action against her former employer, its president and its governing board alleging employment discrimination on the basis of a handicap pursuant to G.L.c. 15 IB and 42 U.S.C. 12101 et. seq. (the Americans with Disabilities Act) (Count I), intentional infliction of emotional distress (Count II), negligent infliction of emotional distress (Count III), and violation of G.L.c. 93 § 103 (the Massachusetts Equal Rights Act). The defendants have now moved to dismiss this action pursuant to Mass.R.Civ.P. 12(b)(6). Since both parties have submitted documents beyond the scope of the pleadings, the court will treat the defendants’ motion as one for summary judgment. See Stop & Shop Cos., Inc. v. Fisher, 387 Mass. 889, 892 (1983), citing White v. Peabody Constr. Co., 386 Mass. 121, 127-28 (1982); Mass.R.Civ.P. 12(b).
For the reasons set forth below, as to Count I, defendants’ motion is allowed in part and denied in part; as to Counts II and III, defendants’ motion is allowed; and as to Count IV, defendants’ motion is denied.
BACKGROUND
The summary judgment record reveals the following undisputed material facts: Miranda began working for defendant Back Bay Publishing Co. (“Back Bay”) as an office manager in May of 1994. Back Bay is a non-profit corporation which was organized to publish The Daily Free Press, a newspaper staffed mainly by Boston University students and produced primarily to serve the Boston University community. According to Miranda’s complaint,[1] the defendant Board ofTrustees of Back Bay (“the Board”) is the controlling entity of Back Bay and defendant Ed Brennan (“Brennan”) served as president of the Board and editor-in-chief of the newspaper.
Miranda was the only individual employed by Back Bay who received paid vacation, benefits, and insurance. During the time Back Bay employed Miranda, Boston University paid three part-time assistants to work in The Daily Free Press office. Certain members of the Board who managed the newspaper were students who received stipends ranging from $100.00 to $1,250.00 at the end of each semester. In addition, twenty to thirty students who contributed to the newspaper received stipends on a semester-by-semester basis, and approximately six individuals who assisted in securing advertising were paid by commission.[2]
On November 11, 1994, Back Bay terminated Miranda’s employment based on incompetency. Miranda filed a complaint with the Massachusetts Commission Against Discrimination (“MCAD”) and subsequently dismissed that claim in order to pursue the present action in the Superior Court.[3] See G.L.c. 15IB §9. Miranda alleges that the stated reason for her discharge was pretextual, that she was wrongfully discharged because she had cancer, and that, as such, she was an individual with a handicap under 42 U.S.C. 12 et. seq., (the Americans with Disabilities Act) (“ADA”), and G.L.c. 15IB. She further asserts that defendants’ actions constituted intentional or negligent infliction of emotional distress and were a violation of G.L.c. 93 §103 (the Massachusetts Equal Rights Act) ("MERA”).
DISCUSSION
Summary judgment must be granted where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community National Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that the moving party is entitled to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). With respect to any claim on which the party moving for summary judgment does not have the burden of proof at trial, it may demonstrate the absence of a triable issue either by submitting affirmative evidence that negates an essential element of the opponent’s case or “by demonstrating that proof of that element *447 is unlikely to be forthcoming at trial.” Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); accord, Kourouvacilis v. General Motors Corp. 410 Mass. 706, 716 (1991). “If the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts which would establish the existence of a genuine issue of material fact in order to defeat a motion for summary judgment.” Pederson v. Time, Inc., 404 Mass. at 17. The opposing party cannot rest on his or her pleadings and mere assertions of disputed facts to defeat the motion for summary judgment. LaLonde v. Eissner, 405 Mass. 207, 209 (1989).
I. Employment Discrimination (Count I) A. G.L.c. 151B
Back Bay correctly asserts that because it is a non-profit corporation, it is not an employer subject to liability pursuant to G.L.c. 151B. Section 1 of that statute excludes corporations not organized for private profit from its definition of employer. G.L.c. 151B, §1, 5. Miranda cites Black’s Law Dictionary 1056 (6th ed. 1990) in responding that Back Bay distributes income to its members and is therefore not a non-profit corporation. However, Miranda’s reliance on a dictionary definition of a non-profit corporation is misplaced where the legislature has defined those employers which are included in G.L.c. 151B, and where it has specifically excluded corporations “not organized for private profit,” (emphasis added) such as Back Bay.[4]
Miranda asserts that because the Massachusetts Secretary of State dissolved Back Bay in November, 1986, pursuant to G.L.c. 180 §26A,[5] it cannot be a non-profit corporation. The Secretary of State has since revived Back Bay’s corporate status, however, “as if the corporation had not been revoked.” Consequently, Miranda’s assertion is moot.
Next, Miranda maintains that because of Back Bay’s close affiliation with Boston University, an allegedly for-profit corporation, Back Bay should be subject to G.L.c. 151B liability. Evidence of Boston University’s corporate status has not been submitted, however. Moreover, while courts have recognized that private groups closely affiliated with government entities may be subject to the provisions of the Fourteenth Amendment, Miranda cites no authority to support her argument that a close affiliation between a nonprofit corporation and a for-profit corporation would expose the former to liability under G.L.c. 151B. The defendants are therefore entitled to summary judgment on Miranda’s G.L.c. 151B claims.
B. 42 U.S.C. §§12101 et. seq.
Back Bay contends that it cannot be liable for employment discrimination because it does not employ a sufficient number of employees. Under 42 U.S.C. §12111(5), “employer” does not include one who has fewer than 15 employees.[6] Back Bay contends that the students who manage, solicit advertisements, and write articles for the newspaper are either volunteers or independent contractors but they are not employees. Miranda asserts that the students are employees because they receive financial stipends.
Since the students receive some form of compensation, they do not appear to be volunteers. Furthermore, many of the facts which Back Bay has set forth to support its contention that the students are independent contractors have been submitted only through its memorandum of law and not in accordance with Mass.R.Civ.P. 56.[7] With respect to whether Back Bay employed the requisite number of employees, there remains an issue of material fact which precludes summary judgment on this claim.[8]
Turning to Miranda’s employment discrimination claim against Brennan in his individual capacity, there is a split in authority as to whether supervisors are individually liable as “employers” under the ADA. Because 42 U.S.C. §12111(5)(A) defines employer as one who is “engaged in an industry affecting commerce who has 15 or more employees . . . and any agent of such person . . .” (emphasis added), the courts are divided as to whether supervisory officials maybe held individually liable, see Bishop v. Okidata, Inc., 864 F.Supp. 416, 422-23 (D.N.J. 1994); DeLuca v. Winer Industries, Inc., 857 F.Supp. 606, 607-08 (N.D.Ill. 1994), or whether the definition of employer merely incorporates the doctrine of respondeat superior liability into the statute. See Vodde v. Indiana Michigan Power Co., 852 F.Supp. 676, 678-80 (N.D.Ind. 1994); Haltek v. Village of Park Forest 864 F.Supp. 802, 803-06 (N.D.Ill. 1994); Romand v. Zimmerman, 881 F.Supp. 806, 811-12 (N.D.N.Y. 1995).
Those courts which have adopted the latter interpretation have expressed doubt that Congress intended to shield small companies from liability while exposing individuals. See id. But see Bishop, 864 F.Supp. at 423-24. Those courts have also noted that the definition of employer mirrors that of Title VII and have relied on the Ninth Circuit’s Title VII decision, Miller v. Maxwell’s Int’l, Inc., 991 F.2d 583, 587 (9th Cir. 1993), cert. denied, 114 S.Ct. 1049, in which supervisors were not held individually liable. See Vodde, 852 F.Supp. at 678-80, Haltek, 864 F.Supp. at 804, and Romand, 881 F.Supp. at 812.
In Ruffino v. State Street Bank and Trust Co., 908 F.Supp. 1019 (D.Mass. 1995), the United States District Court expressly rejected Miller, supra, and held that supervisory employees may be held liable trader Title VII.[9] Id. at 1047-48. Therefore, at least according to Ritffino, supervisors may be liable as employers under the ADA.[10] Consequently, Brennan is not entitled to summary judgment on this claim.
II. Intentional Infliction of Emotional Distress (Count II)
The Massachusetts Workers’ Compensation Act plainly bars Miranda from pursuing an action in tort *448 against Back Bay for intentional infliction of emotional distress arising out of her termination. Mullen v. Ludlow Hospital Society, 32 Mass.App.Ct. 968, 970 (1992), rev. denied, 413 Mass. 1103; G.L.c. 152 §§1(7A), 24, and 29.
Miranda asserts that her claims against Brennan are not barred by the Workers’ Compensation Act because his discriminatory acts were not in the scope of his employment. However, an act is not beyond the scope of employment merely because it is discriminatory. See Boyle v. Boston Foundation, Inc., 788 F.Supp. 627, 631 (D. Mass. 1992). To the contrary, Miranda’s allegations suggest that her termination was inspired, in part, by a desire to relieve Back Bay of supplying or subsidizing Miranda’s health insurance coverage in light of her illness. Such action would certainly be in furtherance of Back Bay’s interest and within the scope of Brennan’s employment. None of Miranda’s allegations suggest that Brennan was not serving Back Bay’s interest. See id. Because Miranda’s discharge occurred in the course of Brennan’s “employment and in the exercise ... of [his] supervisory duties in furtherance of the employer’s interest,” Miranda is barred from pursuing a claim of intentional infliction of emotional distress against Brennan. Mullen, 32 Mass.App.Ct. at 970. See also Anzalone v. Massachusetts Bay Transportation Authority, 403 Mass. 119, 124 (1988) citing O’Connell, 400 Mass. at 690 (co-employees liable for intentional torts only if it “was in no way within the scope of employment furthering the interests of the employer”).[11] The defendants are therefore entitled to summary judgment as to Count II of Miranda’s complaint.
III. Negligent Infliction of Emotional Distress (Count III)
General Laws c. 152, §29 provides, in pertinent part, that “no mental or emotional disability arising principally out of a bona fide, personnel action including a transfer, promotion, demotion, or termination except such action which is the intentional infliction of emotional harm shall be deemed to be a personal injury within the meaning of this chapter." See also G.L.c. 152, §1(7A). This statute may be construed to bring actions for intentional infliction of emotional distress within the Workers’ Compensation framework while allowing civil actions in tort against employers for negligent infliction of emotional distress arising out of a personnel action. Such construction is dubious, however.
In Mullen, supra, the Court noted that, “[i]t seems a paradox to eliminate nonintentional infliction of emotional harm arising out of a personnel action as a workers’ compensation claim but to allow such a claim through another door as a common law action.” Mullen, 32 Mass.App.Ct. at 970. The Court went further in Catalano v. First Essex Savings Bank, 37 Mass.App.Ct. 377 (1994), rev. denied, 419 Mass. 1101, where it noted, “it seems unlikely that the Legislature intended to preserve a civil action for claims based on negligent infliction of emotional distress that arise from a bona fide personnel action. To do so would negate not only the purpose of relieving employers from the financial burdens of such claims . . . but also negate the intended purpose of the Workers’ Compensation Act to provide a uniform, statutory remedy for injured workers, in contrast to a piecemeal, tort-based system ... As a result, there is no reason to believe that the Legislature intended to open the door to civil actions based on claims for negligent infliction of emotional distress arising out of bona fide personnel actions.” Id. at 380 (citations omitted). See also Ruffino, 908 F.Supp. at 1048-49.
In accordance with this analysis, the court concludes that Miranda may not pursue an action against Back Bay for negligent infliction of emotional distress as a result of her termination. Further, because Brennan was acting within the scope of his employment, the exclusivity provisions of the Workers’ Compensation Act bars Miranda from pursuing an action for negligent infliction of emotional distress against him. See Anzalone, 403 Mass. at 124 citing Mendes v. Tin Kee Ng, 400 Mass. 131 (1977).
IV. G.L.c. 93, §103 (Count IV)
The defendants contend, citing Charland v. Muzi Motors, Inc., 417 Mass. 580 (1994), that Miranda may not pursue a claim under G.L.c. 93, §103 (MERA), because G.L.c. 15 IB provides the exclusive remedy for employment discrimination cases. In Charland, the Supreme Judicial Court repeatedly asserted that where G.L.c. 151B is applicable, it provides the exclusive remedy for employment discrimination. See e.g. Charland, 417 Mass. at 582 (“where G.L.c. 151B is applicable, employees . . . must comply with . . . c. 151B . . .”).[12] However, “where c. 151B [i]s inapplicable, the court decided that its exclusivity provisions do not preclude an independent claim of a violation of an employee’s equal protection rights ...” Charland, 417 Mass. at 586, distinguishing O’Connell v. Chasdi, 400 Mass. 686, 693 (1987). See also Agin v. Federal White Cement, Inc., 417 Mass. 669, 672 (1994) (plaintiff could not pursue G.L.c. 93, §103 claim if remedy were available under G.L.c. 151B). However, since this court has determined that the non-profit corporate status of Back Bay renders G.L.c. 151B inapplicable, its exclusivity provisions do not preclude Miranda from pursuing a claim under MERA.[13]
Back Bay next urges that although MERA provides a remedy when discrimination occurs in the making or enforcement of employment contracts, like its federal analogue, 42 U.S.C. §1981, it does not provide a remedy when the alleged discrimination occurs in the termination of contracts. See Patterson v. McLean Credit Union, 491 U.S. 164, 176-178 (1989); Titcomb v. Boston Safe Deposit & Trust Co., Inc., Civil No. 92-6585-H (Suffolk Super. Ct. Jun. 9, 1993). However, this court (Cratsley, J.) has recently held that discrim *449 ination in the termination of a contract is prohibited under MERA. See Pascucci v. Rocco, Civil Action No. 93-4974-C (Suffolk Super. Ct. Jan. 26, 1996). Moreover, Miranda may well prove that the defendants’ discrimination prevented her from enforcing her health insurance contract.[14]
V. Brennan’s Privilege as Corporate Officer
The defendants maintain that Brennan’s actions were privileged because he was acting at all times within the course of his duties as a corporate officer. However, as a corporate officer, Brennan enjoyed only a qualified privilege subject “to defeasance if his conduct emanated from actual malevolence or malice.” Steranko v. Inforex, Inc., 5 Mass.App.Ct. 253, 273 (1977). Brennan has adduced no evidence sufficient for this court to conclude as a matter of law that he acted without malevolence or malice. Consequently, he has failed to meet his burden of demonstrating that he is entitled to summary judgment based on this qualified privilege. See Pederson, 404 Mass. at 16-17.
ORDER
For the foregoing reasons, the Defendants’ Motion to Dismiss, treated as a motion for summary judgment, is ALLOWED in part and DENIED in part as to Count I, ALLOWED as to Counts II and III, and DENIED as to Count IV.

The complaint was not verified. See Godbout v. Cousens, 396 Mass. 254, 262 (1985). However, for purposes of this motion, the relationships among the parties is not disputed.

Miranda alleges in her memorandum that Back Bay also employs a driver to deliver the newspaper. This allegation was not set forth by affidavit, however. See Mass.R.Civ.P. 56(c).

According to Miranda’s memorandum, she filed a charge with MCAD on or about May 10, 1995. The defendants have not disputed that she filed the charge or the date on which it was filed.

Under 42 U.S.C. §1211 l(5)(B)(ii), a bona fide membership club that is exempt from taxation pursuant to 26 U.S.C. §501 (c) is not an “employer.” There is no indication in the record that Back Bay meets this criterion.

General Laws c. 180, §26A sets forth the annual filing requirements for corporations and authorizes the Secretary of State to revoke the charter of a corporation which fails to meet those requirements. G.L.c. 180, §26A(4). See Brattman v. Secretary of the Commonwealth, 421 Mass. 508 (1995).

Pursuantto G.L.c. 151B, §1, “employer” does not include a corporation which employs fewer than six people. As discussed above, because Back Bay is a non-profit corporation, G.L.c. 15 IB does not apply.

The record is insufficient for the court to ascertain whether Back Bay and Boston University may be deemed a single entity for purposes of determining whether the 15 employee minimum has been satisfied. See e.g. E.E.O.C. v. Chemtech Intern. Corp., 890 F.Supp. 623 (S.D. Tex. 1995).

Whether Miranda’s condition constitutes a disability is also an issue of fact that precludes summary judgment in this case. See Braverman v. Penobscott Shoe Co., 859 F.Supp. 596 (D. Me. 1994).

The First Circuit Court of Appeals has held that “employer” must be interpreted under the ADA as it is interpreted under Title VII. See Carparts Distribution Center, Inc. v. Automotive Wholesaler's Ass. of New England, Inc., 37 F.3d 12, 16 (1st Cir. 1994).

Chief Justice Lageux of the District of Rhode Island recently noted the “marked lack of unanimity” among the districts of the First Circuit and held that supervisory employees may be individually liable under the ADA. Iacampo v. Hasbro, Inc., _ F.Supp. _, 1996 WL 308962 (D.R.I., Jun. 6, 1996). In Quiron v. L.N. Violette Co. Inc., 897 F.Supp. 18, 19-20 (D.Me. 1995), the District Court of Maine noted recent developments in the case law and reversed its previous holdings in Braverman v. Penobscott Shoe Co., supra, and Weeks v. Maine, 871 F.Supp. 515 (D.Me. 1994), to conclude that supervisory employees may not be held individually liable under the ADA. Similarly, in Miller v. CBC Companies, Inc., 908 F.Supp 1054, 1064-65 (D.N.H. 1995), the District Court of New Hampshire reversed its position set forth in Lamirande v. Resolution Trust Corp., 834 F.Supp. 526, 527-29 (D.N.H. 1993), and Douglas v. Coca-Cola Bottling Co., 855 F.Supp. 518, 520-21 (D.N.H. 1994), and concluded that supervisory employees are not individually liable under the ADA.

In support of her argument, Miranda cites Catalano v. First Essex Savings Bank, 37 Mass.App.Ct. 377, (1994), rev. denied, 419 Mass. 1101, where the Court wrote, “we are not prepared to say that the plaintiffs cannot prove any set of facts demonstrating that [defendant’s] actions were not within the course of his employment...” Id. at 382. However, this clause was qualified by the language which preceded it: “at least with respect to the allegation that [the defendant] interfered with [the plaintiffs] performance of her duties preventing her from doing her job properly . . .” Id. Here, Miranda does not allege that Brennan interfered with her job performance prior to her termination.

The Court noted the unlikelihood that the Legislature intended to create a parallel and competing alternative to dealing with employment discrimination in adopting MERA after G.L.c. 15IB. See Charland, 417 Mass. at 580. However, MERA does not provide a parallel and competing alternative where G.L.c. 15IB does not apply.

It should be noted that Miranda filed a charge with MCAD and has not bypassed the administrative requirements of G.L.c. 151B by filing a MERA claim. See Jancey v. School Committee of Everett, 421 Mass. 482, 498 n. 14 (1995).

The record does not limn a clear picture of the relationship between Miranda’s employment and her health insurance benefits: however, all inferences must be drawn in Miranda’s favor. See Connecticut Nat'l Bank of Hartford v. Kommit, 31 Mass.App.Ct. 348, 353 (1991).