Selma **SHIPLEY**, Plaintiff,

v.

Susan Forster **DUGAN**,
et al., Defendants.

No. IP89–1126–C–T/G.

United States District Court,
S.D. Indiana,
Indianapolis Division.

Jan. 19, 1995.

William E. Groth, Neal E. Gath, Fillenwarth Dennerline Groth & Towe, Indianapolis, IN, for plaintiff.

Jon Laramore, Deputy Atty. Gen., Office of the Attorney General, Michael R. Morow, Stephenson & Kurnik, Indianapolis, IN, for defendants.

### Memorandum Entry Regarding Defendants' Motions for Summary Judgment

TINDER, District Judge.

This matter comes before the court upon the motions of Defendants Susan Forster Dugan ("Dugan"), Chris D. Monroe ("Monroe") and Norman D. Curry ("Curry") (collectively "the Judges") and Defendant Randy Allman ("Allman") for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. The court, having considered the motions, affidavits and supporting and opposing briefs, finds that Defendant Judges' motion for summary judgment should be **DENIED** and Defendant Allman's motion for summary judgment should be **GRANTED IN PART** and **DENIED IN PART**.

### I. Background and Procedural History

Plaintiff Selma Shipley ("Shipley") applied in 1987 for an advertised opening for a probation officer in Bartholomew County, Indiana. At that time, Allman, who had been placed in charge of making an initial screening of candidates by the Judges, chose not to grant her an interview. Shipley then sought the intervention of the mayor of Columbus, Indiana, and upon his request, Defendant Dugan ordered Allman to interview Shipley. Following the initial screening, four individuals, not including Shipley, were passed through to the second phase of the hiring process and were interviewed by the Judges themselves. Following these interviews, Scott Hundley, who at the time was already a Bartholomew County employee and was familiar to the Judges, was chosen to fill the probation position.

Following Hundley's selection, Shipley filed a formal complaint with the Equal Employment Opportunity Commission ("EEOC") alleging that she had been passed over in the selection process because of her race and national origin. In 1989, during the pendency of the EEOC investigation, another position in the Bartholomew County probation department was advertised and Plaintiff again applied. She was again passed over in the selection process, this time receiving no interview at all. Seven applicants were interviewed by the Judges and Marcia Trisler was selected to fill the 1989 position. Following this selection, Plaintiff filed another EEOC complaint alleging that she was passed over for consideration for the 1989 position in retaliation for her filing the 1987 EEOC complaint. After receiving a right to sue letter, Plaintiff filed the instant suit alleging violations of 42 U.S.C. § 1981, 42

U.S.C. § 1983 and Title VII of the Civil Rights Act of 1964.

■ There is some dispute as to the nature of the selection process followed. Allman alleges that he merely collected the applications and all decisions as to which applicants would proceed to the second round of interviews were made by the Judges. The Judges contend that Allman made the initial screening of applicants and that they merely interviewed those applicants who received Allman's recommendation for another interview.[1] This dispute creates a genuine issue of material fact as to who was responsible for the initial screening of candidates. If Allman had the initial responsibility for screening candidates and if he discriminated against Plaintiff in the screening process, then he would be liable for his actions and the Judges would be liable in their official capacities as the representatives of the entity which employed Allman. If Allman had no screening role whatsoever and the Judges made all of the relevant employment decisions themselves, then Plaintiffs claims will likely fail because she has adduced no evidence to indicate any discriminatory animus on the part of the Judges in the selection process.

A complete description of the claims stated in Plaintiff's fourth amended complaint is set forth in the court's Entry Granting the Judges' Motion to Dismiss, Granting the County's Motion to Dismiss, and Granting in Part Defendant Allman's Motion to Dismiss the Fourth Amended Complaint dated February 4, 1993 at pp. 1–3. As a result of the February 4, 1993 entry and the court's Entry Granting Plaintiff's Motion for Reconsideration and Vacating in Part the Court's Entry of February 4, 1993 dated March 31, 1993, the following issues remain for resolution:

1. Count II states a claim under 42 U.S.C. § 1983 against Defendant Allman in his individual capacity for depriving Plaintiff of her Fourteenth Amendment rights under color of state law regarding her attempt to obtain employment in 1989.

Count II further states a claim under 42 U.S.C. § 1981 against Defendant Allman in his individual capacity for discriminating against Plaintiff because of her race or national origin in the incident regarding the 1989 employment contract. Counts III and IV, to the extent they remain viable, merely repeat the § 1981 and § 1983 claims against Defendant Allman regarding the 1989 incident.

2. Counts I, II and III state a claim under 42 U.S.C. § 2000e et seq. against Defendants Dugan, Monroe, Curry and Allman in their official capacities for discriminating against Plaintiff in the hiring process based upon her race, color or national origin.

■ Much of the confusion engendered by the parties' briefs is a result of Defendants' failure to answer head-on the challenge posed by Plaintiff. To that end, some clarification of the court's interpretation of Plaintiff's claims is necessary to place the following discussion in the appropriate context. Plaintiff's complaint does not focus upon the final hiring decision in either 1987 or 1989. Rather, Plaintiff argues that, based upon her race or national origin and based upon the filing of her EEOC complaint, Defendant Allman discriminated against her in the screening process, and thus she was deprived of the fair opportunity to compete for the positions in question. By framing the issue in this manner, Plaintiff has relegated the question of whether she was more or less qualified than the candidates ultimately selected to only secondary importance. Title VII, section 1981 and section 1983 are offended by discrimination at any point in the selection process. Therefore, if Plaintiff can prove that Defendant Allman screened her out of the selection process based upon the impermissible characteristics of race or national origin or because she filed a complaint with the EEOC, Plaintiff will have prevailed and will be entitled to an injunction prohibit-

---

1. The Judges' interpretation of what transpired appears to be more consistent with the other facts available. In the Probation Department's response to the EEOC investigation, Allman stated that he and his assistant made the initial screening of applicants. Additionally, the fact that Allman conducted the initial interview of candidates would tend to indicate that he had some responsibility for screening applicants, because, if he had no role in screening, any interviews he conducted would have been meaningless.

ing such behavior in the hiring process in the future. Success at this point would also qualify Plaintiff as a prevailing party for purposes of the awarding of attorney fees. Once Plaintiff has established that the selection process was discriminatory, Defendants may prove mitigation of the harm by demonstrating by clear and convincing evidence that even if the process had been fair, Plaintiff would not have been chosen because she was not the most qualified candidate. Success by Defendants at this remedy stage will preclude the award of back pay or an injunction requiring the immediate hiring of Plaintiff to a position similar to the one she was discriminatorily denied.

With this procedural context in mind, it is clear that Defendants' almost exclusive focus upon the fact that Plaintiff is less qualified than the candidates ultimately chosen is not dispositive of the case at bar. Consequently, the court will review Defendants' motions to determine whether they nevertheless state a sufficient ground upon which summary judgment may be granted.

## II. Summary Judgment Standard

The Seventh Circuit stated the standard for summary judgment in *Howland v. Kilquist,* 833 F.2d 639 (7th Cir.1987).

> Fed.R.Civ.P. 56(c) provides that a district court shall grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." When the facts are disputed, the parties must produce proper documentary evidence to support their contentions, and may not rest on mere allegations in the pleadings, *Posey v. Skyline Corp.,* 702 F.2d 102, 105 (7th Cir.), *cert. denied,* 464 U.S. 960[, 104 S.Ct. 392, 78 L.Ed.2d 336] (1983), or upon conclusory statements in affidavits. *First Commodity Traders v. Heinold Commodities, Inc.,* 766 F.2d 1007, 1011 (7th Cir.1985). In reviewing a grant of summary judgment, all reasonable inferences from the evidence presented must be drawn in favor of the opposing party. *Matsushita Elecs. Indus. Co., Ltd. v. Ze-*

*nith Radio Corp.,* 475 U.S. 574, 587[, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538] (1986).... The mere existence of a factual dispute will not bar summary judgment unless "the disputed fact is outcome determinative under governing law." *Egger v. Phillips,* 710 F.2d 292, 296 (7th Cir.) (en banc), *cert. denied,* 464 U.S. 918[, 104 S.Ct. 284, 78 L.Ed.2d 262] (1983).

*Id.* 833 F.2d at 642.

■ The Supreme Court further clarified the scope of Federal Rule of Civil Procedure 56 in *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) and *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In *Celotex,* the Court held that the initial burden is on the moving party to demonstrate "with or without affidavits" the absence of genuine issues of material fact and that, absent such material facts, judgment should be granted as a matter of law in the moving party's favor. 477 U.S. at 323, 106 S.Ct. at 2552. Once the moving party has met its burden, the opposing party must "go beyond the pleadings" and designate specific facts to support or defend each element of the claim, demonstrating a genuine issue for trial. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. at 2552; *Becker v. Tenenbaum–Hill Assocs., Inc.,* 914 F.2d 107, 110 (7th Cir. 1990). Not every factual dispute creates a barrier to summary judgment, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510.

■ Supplementing Rule 56, this district promulgated Local Rule 56.1 to establish procedures for summary judgment motions. Local Rule 56.1 requires the party moving for summary judgment to file a Statement of Material Facts and the party opposing the motion to file a Statement of Genuine Issues "setting forth ... all material facts as to which it is contended there exists a genuine issue necessary to be litigated." S.D.Ind.L.R. 56.1. The effect of these requirements is apparent:

In determining the motion for summary judgment, the Court will assume that the facts as claimed and supported by admissible evidence by the moving party are admitted to exist without controversy, except to the extent that such facts are controverted in the "Statement of Genuine Issues" filed in opposition to the motion, as supported by the depositions, discovery responses, affidavits and other admissible evidence on file.

*Id.* Read together, Rule 56 and Local Rule 56.1 stand for the proposition that if the party opposing summary judgment fails to demonstrate the existence of a genuine issue of material fact, the facts offered by the movant, and contained in the record, are the basis of the summary judgment decision.

### III. Discussion

#### A. Violation of 29 C.F.R. § 1602.31 [2]

■ As a preliminary matter, the court must address Plaintiff's allegations that Defendants violated 42 U.S.C. § 2000e–8(c) and 29 C.F.R. § 1602.31 by destroying the records concerning the applications for employment of the other applicants for the positions for which Plaintiff applied. Section 1602.31 provides in pertinent part:

Any personnel or employment record made or kept by a political jurisdiction (including but not necessarily limited to requests for reasonable accommodation application forms submitted by applicants and other records having to do with hiring, promotion, demotion, transfer, layoff, or termination, rates of pay or other terms of compensation, and selection for training or apprenticeship) shall be preserved by the political jurisdiction for a period of 2 years from the date of the making of the record or the personnel action involved, whichever occurs later.... Where a charge of discrimination has been filed, or an action brought by the Attorney General against a political jurisdiction under Title VII or the ADA, the respondent political jurisdiction shall preserve all personnel records rele-

vant to the charge or action until final disposition of the charge or the action. The term "personnel record relevant to the charge," for example, would include personnel or employment records relating to the person claiming to be aggrieved and to all other employees holding positions similar to that held or sought by the person claiming to be aggrieved; and application forms or test papers completed by an unsuccessful applicant and by all other candidates for the same position as that for which the person claiming to be aggrieved applied and was rejected. The date of final disposition of the charge or the action means the date of expiration of the statutory period within which a person claiming to be aggrieved may bring an action in a U.S. district court or, where an action is brought against a political jurisdiction either by a person claiming to be aggrieved or by the Attorney General, the date on which such litigation is terminated.

29 C.F.R. § 1602.31. The application records for the candidates for the 1987 probation officer position, which include the resumes, cover letters and any interview notes relevant to the hiring proceedings, are clearly encompassed within the types of records section 1602.31 seeks to preserve. Accordingly, section 1602.31 requires that these records be maintained for a minimum of two years and longer if a charge of discrimination is pending. Plaintiff filed her first EEOC complaint concerning the 1987 position within one year of the final hiring decision. Consequently, the records of all applicants for the 1987 position should still exist because the charge was filed within the two year period of preservation required by section 1602.31 and a charge of discrimination has been pending, either before the EEOC or this court, ever since that date.

■ Nevertheless, the records were destroyed by Defendants one year after the 1987 hiring decision was made. Defendants contend that their violation of section 1602.31 was inadvertent and that the records were

---

**2.** Plaintiff alleges a violation of 29 C.F.R. § 1602.14. The court will address this as a violation of 29 C.F.R. § 1602.31 because the court believes this section more appropriately

applies to the governmental entities involved. The language of these two sections is very similar and the analysis would be the same under either section.

destroyed routinely as part of a policy to destroy all such records one year after any personnel action is taken. The court notes that there is no evidence to indicate that the records in question were purposefully destroyed in an effort to complicate Plaintiff's efforts in this case. Nevertheless, ignorance of the specific dictates of a federal regulation is no excuse. Plaintiff's attempts to demonstrate that she was more qualified than one or more of the candidates who were passed through the initial stages of the process and who received second interviews with the Judges is necessarily complicated by the absence of these records. Defendants destroyed the records a full year before they could legally do so had there been no charge of discrimination pending. The fact that such a charge had been leveled should have evinced in Defendants an even greater awareness of the need for preserving any records which might be necessary to the investigation, regardless of their asserted lack of knowledge of the dictates of section 1602.31. Inadvertent though Defendants' destruction may have been, Plaintiff has been harmed by Defendants' violative actions and some remedy must avail.

■ Plaintiff asserts that Defendants' destruction of the employment records in violation of section 1602.31 requires the court to recognize an inference[3] that the records so destroyed contained some evidence which would have been favorable to Plaintiff's case. This approach comports with decisions of other courts which have addressed the issue. *Favors v. Fisher*, 13 F.3d 1235, 1239 (8th Cir.1994); *Hicks v. Gates Rubber Co.*, 833 F.2d 1406, 1419 (10th Cir.1987). *See also Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687–88, 66 S.Ct. 1187, 1192, 90 L.Ed. 1515, *reh'g denied*, 329 U.S. 822, 67 S.Ct. 25, 91 L.Ed. 699 (1946) (superceded by statute on other grounds); *Capaci v. Katz & Besthoff, Inc.*, 711 F.2d 647, 661 n. 7 (5th Cir.1983), *cert. denied*, 466 U.S. 927, 104 S.Ct. 1709, 80 L.Ed.2d 182 (1984). *See generally* 2 John H. Wigmore, Evidence in

Trials at Common Law § 291 (James H. Chadbourn rev. 1979). The court notes that the decision whether to apply this inference is totally within the discretion of the court. *See Equal Employment Opportunity Comm'n v. Alton Packaging Corp.*, 901 F.2d 920, 926–27 (11th Cir.1990).

■ The court believes that some remedial measure is appropriate in these circumstances. Plaintiff's ability to prove her case has clearly been burdened by Defendants' destruction of the relevant employment records. Accordingly, the court finds that, for purposes of the instant motions for summary judgment, Plaintiff is entitled to an inference that, were the records destroyed in violation of section 1602.31 still in existence, they would contain evidence favorable to Plaintiff's case. The effects of this inference shall be addressed in due course.

**B. Analytical Framework**

■ Section 703(a)(1) of Title VII of the Civil Rights Act of 1964 provides in relevant part:

It shall be an unlawful employment practice for an employer—

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e–2(a)(1). A plaintiff alleging disparate treatment may prove her case either via direct or indirect evidence of discrimination. In the case at bar, Plaintiff appears to have chosen the indirect manner of proof. The indirect method invokes the burden-shifting approach established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).[4]

---

3. The cases cited refer to the court recognizing a "presumption" that the records would have been helpful to the plaintiff. Professor Wigmore's treatise refers to this as an "inference" and the

court believes this is the more reasoned interpretation.

4. The court notes that the analytical framework for Plaintiff's Title VII claim is the same as that

Under the first step of the analysis, the plaintiff must prove a *prima facie* case of discrimination by a preponderance of the evidence. *Burdine*, 450 U.S. at 252, 101 S.Ct. at 1093. In a case such as this, the *prima facie* case requires the plaintiff to show:[5]

> (1) She belongs to a class protected by Title VII;
>
> (2) She applied and was qualified for the job for which the employer was seeking applicants;
>
> (3) Despite her qualifications she was rejected; and
>
> (4) After the rejection, the position remained open and the employer continued to seek applicants from persons of [the] complainant's qualifications.

*Equal Employment Opportunity Comm'n v. Spokane Concrete Prods., Inc.*, 534 F.Supp. 518, 521 (E.D.Wash.1982) (citing *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824). This formula is flexible and may be adapted to fit the facts of each case. *Burdine*, 450 U.S. at 253 n. 6, 101 S.Ct. at 1093 n. 6. "When an employee satisfies each of the above prongs, he raises an inference of discrimination. These four prongs present a low hurdle" which is not difficult to clear. *Hughes v. Brown*, 20 F.3d 745, 746 (7th Cir.1994) (citation omitted).

Under the *McDonnell Douglas* scheme, "[e]stablishment of the *prima facie* case in effect creates a presumption that the employer unlawfully discriminated against the employee." *Burdine*, 450 U.S. at 254, 101 S.Ct. at 1094. "The defendant's burden is to produce some legitimate nondiscriminatory reason for the challenged employment decision. The explanation must be legally sufficient to justify a judgment in favor of the defendant." *Kirk v. Federal Property Management Corp.*, 22 F.3d 135, 138 (7th Cir. 1994) (citations omitted). "It is important to note, however, that although the *McDonnell Douglas* presumption shifts the burden of *production* to the defendant, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Hicks*, —— U.S. at ——, 113 S.Ct. at 2747 (quoting *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093) (emphasis in original). "'If the defendant carries this burden of production, the presumption raised by the *prima facie* case is rebutted [and] drops from the case.' The plaintiff then has 'the full and fair opportunity to demonstrate,' through presentation of his own case and through cross-examination of the defendant's witnesses, 'that the proffered reason was not the true reason for the employment decision' and that race was." *Id.* (quoting *Burdine*, 450 U.S. at 255–56, 101 S.Ct. at 1094–95). *See Parker v. Secretary, United States Dep't of Hous. & Urban Dev.*, 891 F.2d 316, 321 (D.C.Cir.1989).

In the case at bar, Plaintiff challenges her treatment in the initial stages of the selection process. Defendants seek to prevail by demonstrating that the individuals ultimately selected in 1987 and 1989 were both more qualified for the position than was Plaintiff. Defendants' mischaracterization of the nature of the claim lead to their failure to address it on point in their motions for summary judgment.

Plaintiff alleges that in 1987 Allman discriminated against her on the basis of her race and national origin[6] when he passed

---

for Plaintiff's claims against Defendant Allman under 42 U.S.C. § 1981 and 42 U.S.C. § 1983. *St. Mary's Honor Ctr. v. Hicks*, —— U.S. ——, —— – —— n. 1, 113 S.Ct. 2742, 2746–47 n. 1, 125 L.Ed.2d 407 (1993) (citing *Patterson v. McLean Credit Union*, 491 U.S. 164, 186, 109 S.Ct. 2363, 2377, 105 L.Ed.2d 132 (1989)).

**5.** Relative to Plaintiff's claim of retaliation in 1989, the Seventh Circuit has held:

> A *prima facie* case of retaliation exists when the plaintiff establishes that "(1) she engaged in statutorily protected expression; (2) she suffered an adverse [personnel] action ...; and

> (3) there is a causal link between the protected expression and the adverse action."

*Rennie v. Dalton*, 3 F.3d 1100, 1109 (7th Cir. 1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1054, 127 L.Ed.2d 375 (1994) (quoting *Holland v. Jefferson Nat'l Life Ins. Co.*, 883 F.2d 1307, 1313 (7th Cir.1989)).

**6.** Allman challenges Plaintiff's ability to assert a claim of discrimination based upon national origin because she was born in the United States. First, claims of discrimination based upon national origin are broadly defined and do not require that the plaintiff be foreign born, only

over her in the screening process and presented less qualified candidates to the Judges for second interviews and final selection. Likewise, Plaintiff argues that in 1989 Allman passed her over in the screening process and presented less qualified candidates to the Judges for second interviews and final selection in retaliation for her having filed an EEOC complaint regarding the 1987 selection process. Title VII, and sections 1981 and 1983 provide Plaintiff a right to be free from discrimination throughout the selection process. If the process is discriminatory at any stage, Plaintiff is entitled to relief regardless of her qualifications relative to those ultimately hired. *King v. Trans World Airlines, Inc.,* 738 F.2d 255, 257 (8th Cir.1984); *Ostroff v. Employment Exch., Inc.,* 683 F.2d 302, 304 (9th Cir.1982) ("When an employer summarily rejects an applicant without considering his or her qualifications, those qualifications are irrelevant to whether the Title VII plaintiff has raised a *prima facie* case of disparate treatment."); *Nanty v. Barrows Co.,* 660 F.2d 1327, 1332 (9th Cir.1981). *See also Spokane Concrete,* 534 F.Supp. at 523. Should Plaintiff prove that Defendants discriminated against her in the screening process she will be entitled to appropriate relief.

> When a legitimate candidate for a job has demonstrated that he has been the subject of unlawful discrimination in the employment process, he is entitled to an injunction against future, or continued, discrimination. The purpose of such an order is to ensure that, at the very least, the applicant will receive full and fair consideration from the employer if he seeks similar employment in the future.

*Nanty,* 660 F.2d at 1333.[7] It is at this point that Plaintiff's ultimate qualifications relative to the individuals actually hired is particularly relevant. If Plaintiff "proved unlawful discrimination in the hiring process, then the employer would be entitled to prove by clear and convincing evidence that the job applicant would not have been hired [even in the absence of the proven discrimination] in order to limit the job applicant's relief." *King,* 738 F.2d at 257–58. *Accord United States v. City of Chicago,* 853 F.2d 572, 575 (7th Cir. 1988); *Muntin v. State of Cal. Parks and Recreation Dep't,* 671 F.2d 360, 363 (9th Cir. 1982) ("If the defendant meets that burden, establishing by clear and convincing evidence that the plaintiff would not have been hired even absent the illegal discrimination, then retroactive appointment or promotion, and back pay, would not be among the available remedies.").

## C. The Judges' Motion for Summary Judgment

 To understand the burdens placed upon the Defendant Judges in this case, the court must first clarify the reasoning behind their inclusion in this action. As noted, Plaintiff has admitted that she has no evidence that the Judges themselves discriminated against her in any way. She contends that the discrimination occurred when Allman, for prohibited reasons, refused to forward her application to the Judges, even though she was more qualified for the probation officer position than other candidates whose names were forwarded to the Judges.

The Judges remain in this action in their official capacities as defendants to Plaintiff's Title VII claims, not for any overt discriminatory action taken by them, but rather because of their status as the "employer" in

---

that the discrimination be based in some way upon physical, cultural or linguistic characteristics derived from the plaintiff's ancestry. 29 C.F.R. § 1606.1. Second, in the instant case, Plaintiff's allegations of discrimination based upon race and national origin are inextricably intertwined. Essentially, Plaintiff alleges that Defendants discriminated against her on the basis of her race. In the alternative she alleges that she was discriminated against on the basis of certain physical and cultural characteristics she shares with her ancestors of African origin. Framed in this manner, if Defendants discriminated against Plaintiff because she was African-

American, they simultaneously discriminated against her on the basis of her race and national origin. Title VII prohibits discrimination on either basis, so Defendants' position is neither aided nor harmed by a ruling on this issue. Consequently, Defendant Allman's motion for summary judgment on this point is **DENIED AS MOOT**.

**7.** If Plaintiff is successful on this issue, she will have prevailed on a significant issue in the litigation making her eligible for an award of reasonable attorney fees. *King,* 738 F.2d at 257.

this action. The Judges embody their respective courts and those courts are the Title VII "employer" in this action. Allman, as the agent of those courts for the purposes of this suit, may cause liability on the part of the courts if it is proven that, within the scope of his employment, he discriminated against Plaintiff due to her race or national origin or in retaliation for the filing of her EEOC complaint. Accordingly, the Defendant Judges may be liable in their official capacities for having taken no action other than placing Defendant Allman into a position where he could discriminate in violation of Title VII.

The fatal flaw in the Judges motion for summary judgement is its failure to address on point the contentions in Plaintiff's complaint. Without conceding the point, the Judges allow that Plaintiff may have proven a *prima facie* case of discrimination, but they contend that they have articulated a legitimate, non-discriminatory reason for their actions which cannot be shown by Plaintiff to be a mere pretext. In support of their contention, the Judges argue that the record clearly demonstrates that Plaintiff was less qualified than the individuals selected in either 1987 or 1989. As noted in the previous discussion, this evidence, while clearly relevant to the issue of damages, plainly misses the point of Plaintiff's complaint. Although she contends she was more qualified than the individuals eventually hired, the primary focus of her complaint is that Allman eliminated her from the selection process based solely on the discriminatory reason of her race or national origin. Defendants have adduced little evidence concerning the inherent fairness of the underlying selection process which is the focus of the instant debate.

The court can find very little hard evidence concerning this process.[8] Accordingly, the court interprets the state of the evidence as follows:

1. Plaintiff has alleged a *prima facie* case of discrimination. Defendants while not conceding the point, have, for tactical reasons, chosen not to challenge the point in the instant motion.

2. Defendants have met their burden of production by articulating a legitimate, non-discriminatory reason for their failure to pass Plaintiff through to the next stage of the selection process. This burden was met by Allman's deposition testimony to the effect that he did not forward Plaintiff's application due to the numerous spelling and grammatical errors contained in her submissions, given the fact that the position of probation officer requires a high volume of written work.

3. A genuine issue of material fact[9] remains as to whether Defendants' explanation for their failure to further interview Plaintiff was a mere pretext. Plaintiff has adduced some evidence that her interview was in some ways different from the interviews of other applicants. While not dispositive, this issue raises a question which must be resolved at trial as to whether the interviews were different and, if so, whether the differences arose in a discriminatory context or were merely the result of a natural variation which will result from the different background of any particular interviewee. Additionally, as noted above, due to the destruction of the relevant employment records, Plaintiff is entitled, for purposes of the instant motion, to an inference that some evidence contained within the records would have aided her case and this inference is sufficient to create a genuine issue of material fact concerning the motivation behind the exclusion of Plaintiff from the hiring process and thus preclude a finding in Defendants' favor on their motions for summary judgment.[10] Plaintiff is advised that the inference in ques-

---

8. Of course, this is due primarily to the fact that all of the pertinent employment records were destroyed one year after the selection took place.

9. *See Lindahl v. Air France*, 930 F.2d 1434, 1438 (9th Cir.1991) ("[B]ecause of the inherently factual nature of the inquiry, the plaintiff need produce very little evidence of discriminatory motive to raise a genuine issue of fact.").

10. The questions surrounding delegation of the screening duties to Allman, together with the unresolved issues noted above, likewise create genuine issues of material fact regarding Plaintiff's 1989 retaliation claim.

tion is in the nature of a permissive inference such as that discussed by the Seventh Circuit in *Gehring v. Case Corp.*, 43 F.3d 340, 340 (7th Cir.1994), and thus will be available for argument at trial but will likely not be the subject of a separate instruction submitted to the jury. Plaintiff will have to present sufficient facts to satisfy her ultimate burden of proof that the reasons for her elimination from the selection process were based upon the illegally discriminatory reasons of race or national origin.

Because a genuine issue of material fact remains as to whether Defendants' articulated reasons for refusing to further interview Plaintiff were a mere pretext for discrimination, summary judgment on the merits for any Defendant at this point is inappropriate. Accordingly, the motion for summary judgment of Defendants Dugan, Monroe and Curry is hereby **DENIED.** Additionally, those portions of Defendant Allman's motion for summary judgment based upon the merits of Plaintiff's complaint are likewise **DENIED.** The court shall now address the specific procedural aspects of Defendant Allman's motion for summary judgment.

### D. Allman's Motion for Summary Judgment

#### 1. Claims Under 42 U.S.C. §§ 1981 & 1983

#### a. Official Capacity

Allman moves for summary judgment on Plaintiff's sections 1981 and 1983 claim against him in his official capacity. Allman fails to note this court's Entry Granting the Judges' Motion to Dismiss, Granting the County's Motion to Dismiss, and Granting in Part Defendant Allman's Motion to Dismiss the Fourth Amended Complaint dated February 4, 1993 at pp. 16 which specifically dismisses with prejudice Plaintiff's claims under both sections 1981 and 1983 against Allman in both his individual and official capacity relative to the 1987 hiring decision and against Allman in his official capacity relative to the 1989 hiring decision. Therefore, that portion of Allman's motion which seeks summary judgment on the sections 1981 and 1983 claims in his official capacity are hereby **DENIED AS MOOT.**

#### b. Individual Capacity

█ Allman next moves in his individual capacity for summary judgment on the merits of the sections 1981 and 1983 claims. As noted above, genuine issues of material fact remain to be resolved on the merits of these claims, rendering summary judgment at this stage of the proceedings inappropriate. Accordingly, Defendant Allman's motion for summary judgment on Plaintiff's claims against him in his individual capacity under 42 U.S.C. §§ 1981 and 1983 is hereby **DENIED.**

#### 2. Claims Under Title VII

#### a. Official Capacity

Allman moves for summary judgment on the merits of Plaintiff's Title VII claims against him in his official capacity. As noted above, genuine issues of material fact remain to be resolved on the merits of these claims, rendering summary judgment at this stage of the proceedings inappropriate. Accordingly, Defendant Allman's motion for summary judgment on Plaintiff's Title VII claims against him in his official capacity regarding both the 1987 and 1989 hiring decisions is hereby **DENIED.**

#### b. Individual Capacity

Finally, Defendant moves for summary judgment seeking dismissal of Plaintiff's Title VII claims regarding the 1987 and 1989 hiring decisions against Allman in his individual capacity. To the extent the court's previous rulings have not clarified the status of this claim, the court now addresses the issue. Plaintiff, in part, seeks to hold Allman individually liable under Title VII, which prohibits "employers" from discriminating against individuals on the basis of "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a). The statute defines an "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding year, and any agent of such person...." *Id.* at § 2000e(b). In the purest business sense, Allman is an agent of

the Defendant Judges. However, under the definition above, the question remains whether, by including the language "and any such agents," Congress intended to subject supervisors to individual liability as "employers" under the statute.

The Seventh Circuit has not explicitly addressed this question, although it has upheld personal liability against supervisors in Title VII cases without comment. *See Gaddy v. Abex Corp.,* 884 F.2d 312, 318–19 (7th Cir. 1989) (upholding personal liability for decision-making supervisor). Courts of Appeals of other circuits which have addressed the issue are divided. The majority hold that a supervisor cannot be held individually liable as an employer under Title VII; if an employee seeks to hold a supervisor liable, the employee must proceed against the supervisor only in his or her official capacity. *See Sauers v. Salt Lake County,* 1 F.3d 1122, 1125 (10th Cir.1993) ("[S]uits against individuals must proceed in their official capacity; individual capacity suits are inappropriate."); *Miller v. Maxwell's Int'l, Inc.,* 991 F.2d 583, 587 (9th Cir.1993), *cert. denied sub nom. Miller v. La Rosa,* —— U.S. ——, 114 S.Ct. 1049, 127 L.Ed.2d 372, *and reh'g denied,* —— U.S. ——, 114 S.Ct. 1585, 128 L.Ed.2d 226 (1994) ("[I]t is unlikely that Congress intended to impose personal liability on supervisors."); *Busby v. City of Orlando,* 931 F.2d 764, 772 (11th Cir.1991); *Harvey v. Blake,* 913 F.2d 226, 227 (5th Cir.1990) (noting that a supervisor can only be held liable in his or her official capacity). The general reasoning is that the language of the statute confers liability on the employer through respondeat superior. *Miller,* 991 F.2d at 587. *See also Johnson v. Northern Ind. Pub. Serv. Co.,* 844 F.Supp. 466, 469 (N.D.Ind.1994) (indicating that the more reasoned reading of the statute is that the "and any agent of such person" language was meant to incorporate respondeat superior into the statute). At least two circuits have held that supervisors may be liable in their individual capacity under Title VII. *See Paroline v. Unisys Corp.,* 879 F.2d 100, 104 (4th Cir.1989), *vacated in part on reh'g,* 900 F.2d 27 (1990); *Jones v. Continental Corp.,* 789 F.2d 1225, 1231 (6th Cir. 1986).

District courts are divided on this question as well. What seems clear is that the term "employer" is defined to include any agent of the employer. 42 U.S.C. § 2000e(b). In determining whether Congress intended to confer personal liability on those agents, this court is persuaded that it did not. Adopting the words of the court in *Vodde v. Indiana Mich. Power Co.,* "[i]n answer to that question, *Miller* basically got it right." 852 F.Supp. 676, 679 (N.D.Ind. 1994) (citing *Miller,* 991 F.2d at 587).

The Ninth Circuit in *Miller* determined that supervisors could not be held individually liable under Title VII. They reasoned that the statutory scheme itself indicated that Congress did not intend to impose individual liability.

> The statutory scheme itself indicates that Congress did not intend to impose individual liability on employees. Title VII limits liability to employers with fifteen or more employees, 42 U.S.C. § 2000e(b), ... in part because Congress did not want to burden small entities with the costs associated with litigating discrimination claims. If Congress decided to protect small entities with limited resources from liability, it is inconceivable that Congress intended to allow civil liability to run against individual employees.

*Miller,* 991 F.2d at 587.

Prior to passage of the Civil Rights Act of 1991, Pub.L. No. 102–166, 105 Stat. 1071 (codified in pertinent part at 42 U.S.C. 1981a), some courts that reached the same conclusion as *Miller* "strengthened" their arguments by noting that Title VII contained remedies that an employer, as opposed to an individual, could generally provide. The most obvious examples are back pay and reinstatement. *See Pommier v. James L. Edelstein Enters.,* 816 F.Supp. 476, 481 (N.D.Ill.1993) (citing *Weiss v. Coca–Cola Bottling Co.,* 772 F.Supp. 407, 410–11 (N.D.Ill. 1991)). The Civil Rights Act of 1991 expanded the types of remedies available to an employee under Title VII by adding compensatory and punitive damages to the list. 42 U.S.C. § 1981a(a)(1). However, this addition does not mean that Congress intended to impose personal liability on agents of em-

ployers. *See Miller,* 991 F.2d at 587–88 n. 2; *Vodde,* 852 F.Supp. at 680. While some courts have disagreed with this proposition, this court finds the reasoning behind it, as expressed by the *Miller* court, persuasive.

The court in *Miller,* addressing the consequences of the expanded remedies under Title VII, pointed out that Congress specifically capped the amount of compensatory and punitive damages available to an employee according to the size of the employer. *See* 42 U.S.C. 1981a(b)(3). Furthermore, they did not change the definition of "employer" to include those companies with fewer than fifteen employees. It is logical to assume that, if Congress had intended to hold supervisors individually liable, it would have included individuals in the list of damage caps and eliminated the exemptions afforded smaller employers. *See Miller,* 991 F.2d at 587–8 n. 2; *Vodde,* 852 F.Supp. at 680; *Johnson,* 844 F.Supp. at 469 ("[I]t is inconsistent to believe that Congress intended to limit liability on the one hand while making agents individually liable on the other hand.").

■ Title VII seeks to achieve two goals: compensation and deterrence. *See, e.g., Johnson,* 844 F.Supp. at 469; H.R.REP. No. 102–40(I), 102d Cong., 1st Sess. 14 (1991), *reprinted in* 1991 U.S.C.C.A.N. 549, 552. This court believes those goals can be adequately met without imposing individual liability on supervisors. Because an employer can be held liable for discriminatory acts of its supervisory employees, it is in the employer's best interests to ensure that its employees do not engage in such behavior. As the court noted in *Miller,* "[n]o employer will allow supervisory or other personnel to violate Title VII when the employer [will be held] liable for the Title VII violation." 991 F.2d at 588. *See also Vodde,* 852 F.Supp. at 681. As for compensation, a plaintiff can obtain the full relief available by bringing an action against the company. *See Pommier,* 816 F.Supp. at 481.

The court in *Pommier* held that while a supervisor is an "agent" of an employer, he or she stands only "as a surrogate for the employer" and, therefore, may only be held liable in his or her official capacity. 816 F.Supp. at 481 (citing *Weiss,* 772 F.Supp. at

410–11). To the extent that Plaintiff has asserted a Title VII claim against Allman in his individual capacity, the court **GRANTS** Allman's motion for summary judgment and dismisses with prejudice any Title VII claim against Allman in his individual capacity for failure to state a claim upon which relief can be granted.

## IV. Conclusion

For the reasons stated above, the court rules as follows: (1) Defendants Dugan, Monroe and Curry's motion for summary judgment is hereby **DENIED;** (2) Defendant Allman's motion for summary judgment regarding Plaintiff's claim of discrimination based upon national origin is hereby **DENIED AS MOOT;** (3) Defendant Allman's motion for summary judgment regarding Plaintiff's sections 1981 and 1983 claims against Allman in both his individual and official capacities relative to the 1987 hiring decision is hereby **DENIED AS MOOT;** (4) Defendant Allman's motion for summary judgment regarding Plaintiff's sections 1981 and 1983 claims against Allman in his official capacity relative to the 1989 hiring decision is hereby **DENIED AS MOOT;** (5) Defendant Allman's motion for summary judgment regarding Plaintiff's sections 1981 and 1983 claims against Allman in his individual capacity relative to the 1989 hiring decision is hereby **DENIED;** (6) Defendant Allman's motion for summary judgment regarding Plaintiff's Title VII claims against Allman in his official capacity is hereby **DENIED;** and (7) Defendant Allman's motion for summary judgment regarding Plaintiff's Title VII claims against Allman in his individual capacity will be **GRANTED** and Plaintiff's Title VII claims against Defendant Allman in his individual capacity will be **DISMISSED WITH PREJUDICE** when judgment is entered. Accordingly, the following issues remain for resolution:

1. Plaintiff's claims under 42 U.S.C. §§ 1981 and 1983 against Defendant Allman in his individual capacity relative to the 1989 hiring decision.

2. Plaintiff's claims under Title VII of the Civil Rights Act of 1964 against Defendants Dugan, Monroe, Curry and Allman in their official capacities.

Trial on the merits of these issues will proceed in due course.

ALL OF WHICH IS ORDERED.